# THE HERRIMAN IRRIGATION COMPANY, A CORPORATION, APPELLANT, *v.* THE BUTTERFIELD MINING AND MILLING CO., A CORPORATION, AND GEORGE W. KEEL, ET AL., RESPONDENTS.

APPROPRIATION OF WATER — PROOF OF — CONTINUOUS USER — PRIMA FACIE CASE. COMMINGLING OF WATERS — PARTY RESPONSIBLE FOR — RIGHTS OF. CROSS-COMPLAINT — BURDEN OF PROOF. WATER SUPPLY — SPRINGS — TUNNELS — DIMINISHED FLOW — PREPONDERANCE OF EVIDENCE — IRRESISTIBLE CONCLUSION — RIGHTS OF PARTIES. QUERY — DAMNUM ABSQUE INJURIA. DISCHARGE OF WATERS — CHANGE CAUSED BY TUNNEL — RIGHTS OF PRIOR APPROPRIATORS. BILL OF EXCEPTIONS — AFTER DETERMINATION OF MOTION FOR NEW TRIAL — IN TIME UNDER SEC. 3285, R. S. 1898.

1. *Appropriation of Water — Proof of — Continuous User — Prima Facie Case.*

Where the evidence shows that plaintiff's grantors and predecessors in interest appropriated the waters of a certain creek as early as 1852, and that the use thereof has been continuous by the appropriators and their successors from thence to the present time, a *prima facie* case is made out, and the burden is cast upon defendants to show that water diverted by them was their property, that they had a right to divert the same, and that they did not divert more than belonged to them.

2. *Commingling of Waters — Party Responsible for — Rights of.*

Where one without consent, intentionally confounds his property with property of the same kind belonging to a stranger, he will lose the whole unless he can prove the quantity belonging to himself.

3. *Cross-Complaint — Burden of Proof.*

The burden of proving the allegations in a cross-complaint necessary to entitle defendants to a decree, rests upon them, to the same extent, as if they had brought an original action, to obtain the relief sought in the cross-complaint; and a fail-

ure to make such proof renders a decree for the cross-complainant erroneous.

4. *Water Supply — Springs — Tunnels — Diminished Flow — Preponderance of Evidence — Irresistible Conclusion — Rights of Parties.*

Where the evidence shows and the trial court finds that certain springs, which had for many years and uninterruptedly formed a portion of the water supply of a creek, the waters of which had been appropriated by plaintiff, were in some instances diminished in flow, and in others dried up after the running of defendants' tunnels, the conclusion is irresistible that the tunnels cut the underground channels of the springs, and defendants could only acquire a right in such water flowing from the tunnels into the stream as was developed by percolation, and the plaintiff retains its original rights. This, too, although the underground channels of the springs are not traceable.

5. *Query — Damnum Absque Injuria.*

*Query.*— If a tunnel should be run by a party in the proper exercise of his dominion over his own real estate, which dries up the springs whose channels are not traceable but feeding a stream, the waters of which had previously been appropriated by another, and the water of the tunnel should be discharged not into the stream but at a point which renders it impossible to restore the same to the stream, would not these facts present an instance of *damnum absque injuria?*

6. *Discharge of Waters — Change Caused by Tunnel — Rights of Prior Appropriators.*

Where water from a tunnel is discharged into a stream previously appropriated it would be inequitable to deprive the first appropriator of his original rights, by allowing the diversion of water which would naturally flow into the stream, but which on account of the tunnel is discharged into the stream at a point different from the natural flow.

7. *Bill of Exceptions — After Determination of Motion for New Trial — In Time under Sec. 3285, R. S. 1898.*

Under Sec. 3285, R. S. 1898, it is sufficient if a bill of exceptions be settled, signed, and filed within ninety days after the determination of a motion for a new trial.

(Decided May 19, 1899.)

Appeal from the Third District Court Salt Lake County, Hon. Ogden Hiles, *Judge*.

Action to enjoin defendants from continuing to divert water which plaintiff claims the exclusive right to use for irrigation and domestic purposes.

From a judgment and decree dismissing plaintiff's complaint and entering judgment for defendants on their cross-complaint, plaintiff appeals. *Reversed*.

*Messrs. King, Burton & King*, and *Messrs. Ferguson & Cannon*, for appellants.

*Messrs. Bennett, Harkness, Howat, Bradley & Richards*, for respondents.

BASKIN, J.

This is an action to enjoin the defendants from continuing to divert water which the plaintiff claims the exclusive right to use for irrigating and domestic purposes. The complaint alleges "that in the year 1850, the grantors and predecessors in interest of plaintiff located, settled upon and began the cultivation of a large tract of land in the southwest part of Salt Lake County, Utah; that said land is sterile and arid and is valuable only for agricultural purposes through irrigation; that continuously from said date until the present time the plaintiff's predecessors and stockholders have cultivated said land and have laid out a town thereon, made homes and improvements, and have been and are still dependent upon said lands for their sustenance and support.

"That the only sources of supply from which water can be obtained for the irrigation of said lands are what are known as Rose Creek and Butterfield Creek, which rise from melting snow in the mountains surrounding Herri-

man, in said county, which, in the year 1850, plaintiff's predecessors entered upon and appropriated and used the waters therein for irrigation and domestic purposes upon the land. That said waters had not been appropriated prior to that time, and that thereafter plaintiff's predecessors and stockholders have appropriated and used during each year all of the waters of said streams for irrigating said lands and for domestic purposes, except when said waters were interfered with by defendants.

"That Butterfield Creek was and is the particular source of supply, furnishing more than double the amount of water supplied by Rose Creek.

"That all of the waters of said creeks are absolutely indispensable for irrigating said lands and for domestic and culinary purposes and that without all of said waters said lands will become valueless, and the homes and improvements thereon belonging to plaintiff's stockholders will become worthless and plaintiff and its stockholders will suffer great and irreparable loss and injury.

"That during the entire period from the year 1850 until the year 1894, plaintiff's grantors and predecessors in interest and plaintiff's stockholders had the free, full, and unrestricted use of all the waters of said streams, and that no person or persons made any claim thereto."

The complaint further alleges that the defendants have willfully diverted a portion of the water so as aforesaid owned and appropriated from the natural channel, and deprived plaintiff's stockholders of its use and threaten to continue to divert the same; and if permitted to do so the lands of plaintiff's stockholders will be made desolate, and their property be destroyed to their great and irreparable damage.

Defendants deny that they have wrongfully diverted the water, and deny all of the other allegations of the com-

plaint, and by way of cross-complaint allege that "in the year 1892, and since then the defendant Butterfield Mining Company owned a large number of mining claims near the point where it is alleged the waters of Butterfield Creek were diverted and has spent over $200,000 in working and developing the same; that in 1892 it ran two tunnels, one called Queen Tunnel, commencing on the mountain about one thousand feet above Butterfield Creek and continuing northwesterly into the mountain a distance of over 3,400 feet, and the other, called Butterfield Tunnel, commencing near Butterfield Creek about two and a quarter miles above and southwesterly from the point where, in the complaint it is alleged the waters of the creek are diverted; that in the progress of the work on those tunnels seepage water from the rocks and ground collected in the tunnels and flowed therefrom; that on the 24th day of February, 1893, the defendant company posted at the mouth of the tunnels and filed in the office of the Recorder of the West Mountain Mining District, notices of the appropriation of said waters for mining, manufacturing, agricultural and other purposes, and that temporarily the water would run into Butterfield Creek and afterward be diverted by said defendant company to the uses aforesaid.

"That in and since the year 1892, the defendants, other than the Butterfield Mining Company, took up, fenced, and have since occupied about 2,800 acres of land on the northerly side of said Butterfield Creek, and from two to four miles southerly of the power house, and acquired from the defendant company the waters flowing from said tunnel to irrigate and reclaim the lands for cultivation, and for use thereon for farming and other purposes and constructed a headgate in the channel of Butterfield Creek about two and a quarter miles above the power house,

made a ditch, and conducted by means thereof to their said lands the waters flowing from said channels.

"That at no time have defendants taken from said Butterfield Creek at said headgate as much water as comes thereto from said tunnels, or decreased or diverted any of the natural flow of the creek at or below that point; but on the contrary, have taken less water from said creek than the amount the natural flow was increased by the water coming in from said tunnels.

"That the plaintiff unlawfully and wrongfully claims at said headgate all the waters flowing from the tunnels of the defendant company, and claims the right and threatens to divert said waters from defendants' ditch, and defendants believe that unless restrained the plaintiff will so divert said waters to the irreparable damage of said defendants.

"Defendants pray that the amount of water to which each of the parties is entitled at said headgate may be ascertained; that the plaintiff be enjoined pending the action, and by judgment perpetually enjoined from diverting or in anywise interfering with the waters flowing from the tunnels from defendants' ditch at said headgate, and such other relief as may be equitable and proper."

The answer to the cross-complaint admits that said tunnels were run, but denies the allegation of the defendants, that they have taken less water from Butterfield Creek than the amount the natural flow was increased by the water coming in from said tunnels. It is also alleged in said answer to the cross-complaint that said "tunnels driven by defendants intercepted waters which had been the natural sources of supply of Butterfield Creek; that by the construction of Butterfield Tunnel well defined channels in which water was flowing to springs tributary to said Butterfield Creek were intercepted, and the waters

therein wrongfully and unlawfully diverted and prevented from continuing in said channel where they had been flowing for a great many years, thereby cutting off a portion of the water supply of said plaintiff, and depriving it and its stockholders of the water to which they were entitled. That the Queen Tunnel intercepted waters which had from beyond the memory of man flowed uninterruptedly and continuously into said Butterfield Creek, and which since the year 1850 had been used by plaintiff's grantors and predecessors in interest upon their lands as set forth in plaintiff's complaint."

The only findings of the trial court necessary to be considered, in a decision of the case, are as follows:

"Second. In or about the year 1852, various settlers upon lands in or near what is known as the village or settlement of Herriman, in Salt Lake County, Utah, being thirty or thirty-five in number and the heads of families, appropriated for beneficial use in irrigating their lands all the waters flowing in Butterfield Creek at the point of diversion, which is about two miles above the village or settlement of Herriman, and the lands on which the water was used, and they and their successors in occupation and interest have ever since used said waters for said land. That the persons entitled to the use of said waters organized the plaintiff corporation for the purpose of controlling the use and distribution of said waters, according to the respective rights of the corporators and shareholders, and conveyed to it the said waters for such purposes, and the plaintiff corporation is the owner of, and represents all parties beneficially interested in the appropriation of said waters and the use thereof.

"Sixth. That in each of said tunnels, as the work progressed, seepage waters from the adjoining rocks collected, and neither of the tunnels cut or diverted the waters of

any underground channel or water course, or diverted any waters except those percolating in and from its mining ground by natural seepage. That considerable streams of water were thus formed in and run from said tunnels, a preponderance of the testimony shows, and I find that since the Queen and Butterfield tunnels were made, some springs on the northerly side of Butterfield Creek and near the bed of the creek and its branches, and which flowed into the creek and its branches, have dried, and some have diminished in flow. The most important of these are a mile and a half from the line of the tunnels, and they were not the outlet of any subsurface water course or stream having any defined channel connecting them with or extending to or beneath the ground through which said tunnels extend.

"Seventh. That the said Butterfield Mining Company allowed the water from the Butterfield and Queen tunnels to run into the Butterfield Creek, but without any intention to abandon the same or the use thereof, but with intention to take the same from the creek and apply the same to any beneficial use.

"Tenth. That in the year 1892, and following that date, the defendants other than the Butterfield Mining Company, have occupied and fenced about 2,800 acres of land, situated from one to four miles below said tunnels, and procured from the defendant, the Butterfield Mining Company, the right to use the waters of said tunnels, and to irrigate the same, and about the year 1894 made a headgate in the creek about two miles above where plaintiff diverts its waters, and from thence a ditch to their lands, and from that time until and since the commencement of this suit, have claimed the right to divert to their lands the waters flowing from said tunnels, except so much thereof as was lost by seepage and evaporation, and have so used a part of said waters.

"Eleventh. That at no time have the defendants or any of them, by means of said headgate, which is the same headgate mentioned in the complaint, and ditch, or in any way diverted more water from said creek than was added to the natural flow at that point by waters flowing from said tunnel.

"Twelfth. The statements of facts in the cross-complaint in relation to the development of water in the tunnels, and the use thereof made by the defendants, and the manner of such use, are substantially true, but I find the amount of water flowing naturally in the creek and also from said tunnels varies, and I make no finding as to the quantity of either."

As conclusions of law, the following findings were made:

"First. That the plaintiff is entitled to all the waters naturally flowing in Butterfield Creek at a point where it diverts the same.

"Second. That the defendants have not diverted any waters from said creek belonging to the plaintiff, or which it has a right to use.

"Third. That the defendants are entitled to the judgment dismissing plaintiff's complaint.

"Fourth. That the defendants are entitled to the judgment on their cross-complaint, as follows:

"Adjudging and confirming the title of the defendants, the Butterfield Mining Company, to the waters flowing from the Queen and Butterfield tunnels, and the right of said company, its licensees, its vendees, and the other defendants, to divert from Butterfield Creek at the headgate aforesaid and perpetually use eighty-four per cent of the waters flowing from the Butterfield and Queen tunnels.

"Fifth. That a commissioner should be appointed to measure the waters flowing from said tunnels and to establish at said headgate where the same is diverted by the

defendants, suitable appliances and means for measuring and diverting to the use of the defendants eighty-four per cent of the waters flowing from said tunnels.

"Sixth. That upon the report of said commissioner, if confirmed by the court, both parties should be enjoined from interfering with the flow of the waters of said creek as established by him.

"Seventh. That in case either party claims after such division that the amount of water flowing from said tunnels has materially increased or decreased, that each party be at liberty under the decree to move the court for an order directing a new measurement thereof, and a new adjustment of the division at the headgate at the expense of the party applying, and for a supplemental decree upon the report of its confirmation.

"Eighth. That the defendants are entitled to judgment for the costs of suit, except as to the proper charges and expenses of the commissioner, which should be fixed by the court and paid by the defendants."

A decree, from which plaintiff appeals, was entered on the cross-complaint, in accordance with said conclusions or law.

The evidence without conflict establishes the facts as found by the trial court, that plaintiff's stockholders, as early as 1852, appropriated all of the waters of Butterfield Creek for irrigation and domestic purposes, and continued to use the same in their individual capacity up to the incorporation of the plaintiff, when they transferred their rights to the plaintiff, and since then have enjoyed the use of said water as stockholders; that the defendants, about the year 1894, erected a headgate, in the natural channel of Butterfield Creek, above the point where plaintiff diverts its water, and from such headgate through a ditch dug by them, or under their authority, diverted

from the natural channel of said creek, a portion of the water flowing therein. Upon the proof of these undisputed facts, the plaintiff made a *prima facie* case, and the burden was cast upon the defendants to show by decisive proof that the quantity of water diverted by them from the natural channel of said creek, flowing into the same from said tunnels, was their property; that they had a right to divert the same, and that they did not divert more than belonged to them.

In the case of *Butte C. D. Co.* v. *Vaughn*, 11 Cal. 143, 153, water from an artificial ditch was turned by its owner into a natural water course and mingled with natural water of the stream, previously appropriated by another, for the purpose of conducting it, in the natural channel of said stream, to another point to be there taken out and used. The prior appropriator brought an action for the diversion of the water, and Mr. Justice Field, in the decision rendered in the case, said: "The burden of proof rests with the party causing the mixture (of the water). He must show clearly to what portion he is entitled. He can claim only such portion as is established by decisive proof. The enforcement of his right must leave the opposite party in the use of the full quantity to which he was originally entitled."

In the case of *Wilcox* v. *Hausch*, 64 Cal., 461, an action by the owner of land was instituted to restrain the defendants from maintaining a dam in a stream running through the land, and from interfering with the flow of water. The defendants admitted the construction of a dam, but denied that the channel was a natural water course, and alleged that the water was conducted into the channel by them from a foreign source. The court found that the stream was a natural water course, and granted a perpetual injunction. The court, in its opinion, said:

"If it be conceded that as against a riparian owner below, a person not such may turn into a natural stream water which would not naturally flow therein, and again divert the quantity of water which he led into the stream, the fact that he had conducted *some* water to it will not authorize him to divert all the water of the stream; and it is for him who has thus interfered with the natural flow to show that he has not taken from the stream more water than he led into it. Otherwise the plaintiff, riparian proprietor, is entitled to an injunction prohibiting the diversion of the water."

The defendant corporation having, without the consent of plaintiff, suffered the water from said tunnels to flow into the natural channel of Butterfield Creek and commingle with the waters of the stream, previously appropriated by plaintiff, it assumed the burden, when it afterward claimed the right to divert any portion of the mingled water, of clearly showing the quantity owned by it, and that such diversion does not diminish the quantity of water previously appropriated by the plaintiff, and if the conditions are such after the commingling of the water that that fact can not be established, then the defendants must lose all right to divert any of the water flowing in the natural channel in said creek, for it is an elementary principle, firmly established, that one who, without consent, intentionally confounds his property with the property of a stranger, though they be of the same kind, will lose the whole unless he can prove the true quantity belonging to himself. *Robinson* v. *Holt*, 75 Am. Dec., 233–236, cases cited, and note.

See also numerous cases in note to *Pulcifer* v. *Page*, 54 Am. Dec., 582. (32 Me., 404.) *Starr* v. *Winegarr*, 3 Hun., N. Y., 491; 2 Kent's Comm. (13 ed.) 364, 365; Storey's Eq. Jur., Sec. 468; Storey on Bailments, Sec. 40.

The burden of making such proof was on the defendants for the additional reason that the decree dismissed plaintiff's complaint, and awarded to the defendants the relief sought by them in the cross-complaint.

The burden of proving the allegations of the cross-complaint, necessary to entitle the defendants to the decree rendered, rested upon them, in the same manner and to the same extent that it would have done had they instituted an original action to obtain the relief prayed for in the cross-complaint, and as proof of the quantity of the confused water which defendants are entitled to, if any, and that only such quantity is being diverted by them, was required, under the well-settled principle before announced, to justify the decree, and if there has been a failure to make such proof, and a failure to make proper findings of these facts, by the court, it follows that the decree is erroneous, and must be reversed, under plaintiff's exception thereto.

It being impracticable to accurately measure the quantity of water running in a natural or artificial channel, we do not think the defendants are required to prove the quantity with such nicety as to show the exact number of miner's inches or cubic feet, but must show such an approximation to the amount as to make it clearly appear that the diversion does not materially diminish the water previously appropriated by and belonging to the plaintiff. If such an approximation is not ascertainable, the plaintiff is entitled to all of the water in the natural channel of Butterfield Creek.

The court, in the sixth finding of facts, found that "neither of the tunnels cut nor diverted the waters of any underground channel or water course, or diverted any waters except those percolating in and from its mining ground by natural seepage."

19 Utah—30

The second and fourth findings of the conclusions of law have no other basis than the facts thus found. If these facts are supported by the evidence, then the conclusion of law based upon them is correct; otherwise, both of said conclusions, and the decree made in pursuance thereof, are erroneous.

The testimony establishes, beyond question, that numerous springs, which have constantly flowed and discharged into Butterfield Creek and its tributaries large quantities of water, from a period as far back as thirty-eight years, up to the time said tunnels were run, have been, ever since said tunnels were completed, dried up and no longer continue to discharge any water.

On this branch of the case, the court found in the sixth finding of facts, before quoted from, that "a preponderance of the testimony shows, and I find, that since the Queen and Butterfield Tunnels were made, some springs on the northerly side of Butterfield Creek, and near the bed of the creek and its branches, and which flowed into the creek and its branches, have dried, and some have diminished in flow. The most important of these are a mile and a half from the line of the tunnels, and they were not the outlet of any subsurface water course or stream having any defined channel connecting them with or extending to or beneath the ground through which said tunnels extend."

The last sentence just quoted from said finding, and the portion of said finding before quoted, is not consistent with the first sentence just quoted, and is not warranted by the evidence.

There was no testimony tending to show that these springs were dried up from any other cause than the running of said tunnels. They had been known to flow continually for thirty-eight years. They ceased to flow when said tunnels were driven into the mountains from which

they issued. By common experience we know that deep tunnels very frequently dry up, not only the springs in their immediate vicinity, but also those remotely situated; that such results only follow when the tunnels cut the underground channels through which the veins of water which supply the springs flow.

The development of percolating water might diminish the flow of springs in the vicinity of a deep tunnel, because the underground channels of springs are supplied by percolation of water from the surface, but would not entirely dry them up, especially those remotely situated.

From the evidence and the findings that a number of springs (the evidence showed that there were about thirteen of them), which previously to the running of said tunnels had so continuously flowed for so many years, were dried up, the conclusion is irresistible that said tunnels cut the underground channels through which said springs were supplied. This being so, as the waters which supplied these springs were diverted from their natural channel and discharged into the natural channel of Butterfield Creek at a different point than the one at which they naturally flowed into the stream, we are clearly of the opinion that the defendant company did not acquire a right to any of the water flowing from said tunnels except such as was developed by percolation, and that the plaintiff retains the right to all the water flowing in the natural channel of Butterfield Creek, diminished only to the extent of the increase of the quantity of water which naturally flowed in the channel of Butterfield Creek, before said tunnels were run, and said springs were dried up. This right of plaintiff is not affected because the underground channels of said springs are not traceable.

*Query.* If a tunnel should be run by a party in the proper exercise of his dominion over his own real estate, which dries up the springs whose channels are not trace-

able but feeding a stream, the waters of which had previously been appropriated by another, and the water of the tunnel should be discharged not into the stream, but at a point which renders it impossible to restore the same to the stream, would not these facts present an instance of *damnum absque injuria?*

But where the water from such a tunnel is discharged into the stream previously appropriated, a different principle governs. In such a case it would be inequitable to deprive the first appropriator of his original rights, and allow the defendants to take from the stream the waters of the springs which naturally flowed into the same, but which, on account of the tunnels were discharged into the stream at a point different from the natural flow.

In the case at bar, George W. Keel, the manager of the defendant company, testified that " the two tunnels were constructed for mining purposes, and we never thought of obtaining water when we commenced the tunnels." So that the preservation of plaintiff's original rights does not deprive the defendant company of any benefit, to obtain which, the tunnels were run.

The onus of showing such increase is on the defendants. The defendant company is entitled to the use of such increase, in carrying out the purposes of its creation, as a corporation, in any manner it chooses, and in doing so to use the natural channel of Butterfield Creek to conduct such increase to any point where the diversion of the same may become necessary.

The evidence fails to show the amount of such increase, if there is any. In the twelfth finding the trial court states that " I find the amount of water flowing naturally in the creek and also from said tunnels varies, and I make no findings as to the quantity of either."

The court in the opinion rendered in the case, and

which is in the record on this subject, further said:
"There is a conflict in the evidence as to whether the
water from these tunnels increased the volume of water in
Butterfield Creek during the dry season, that is, during
the months of July, August, and September. The testi-
mony of the witnesses for the plaintiff, except W. H.
Freeman, tends to show that there was no increase, while
the testimony of the witnesses called for the defendants
all tends to show that the flow or volume was doubled.
I can not find from the evidence, definitely, how much
the tunnel waters have increased the volume of water in
the creek, because no measurement of the creek water was
taken before the tunnels were made, but I think there is
no doubt that there has been a considerable increase of the
volume of water in the creek at all seasons by means of
the tunnels."

It follows that the eleventh finding, and that part of the
sixth in which it is found that the "said springs were not
the outlet of any subsurface water course or stream hav-
ing any defined channel connecting them with or extend-
ing to or beneath the ground through which said tunnels
extend," are erroneous, and are not supported by the
evidence, and that plaintiff's exceptions to them on that
ground are well taken, and that the decree awarding the
defendants all of the water flowing from said tunnel into
Butterfield Creek, except sixteen per cent deducted on
account of loss by evaporation, seepage, and waste is
erroneous.

The respondent made a motion to strike out of the
record appellants' bill of exceptions. It appears that a
motion for a new trial was made by appellants, and was
overruled.

Sec. 3285 Rev. Stat. provides that "a bill of excep-
tions shall in all cases be prepared, settled, signed, and

filed within ninety days after the entry of judgment, or after notice of the same if the case were tried by the court without a jury, or after the determination of a motion for a new trial.

The bill of exceptions in this case was prepared, settled, signed, and duly authenticated by the trial court within ninety days after the motion for a new trial was overruled. The motion to strike out the same is therefore denied.

It is ordered that the decree of the court below be reversed at the cost of defendants, and that the cause be remanded for a new trial.

BARTCH, C. J., and Mc CARTY, Dist. J., concur.