(February 12, 1901.)

## PARKE v. BOULWARE.

[63 Pac. 1045.]

PLEADINGS—MATERIAL ALLEGATIONS.—Under section 4217 of the Revised Statutes, every material allegation of the complaint not controverted by the answer must, for the purposes of the action, be taken as true.

INSUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT AND FINDINGS OF FACT.—*Held*, that the evidence is insufficient to sustain the special verdict of the jury and findings of fact made by the court.

ISSUES—INTRODUCTION OF EVIDENCE.—The rejection of evidence not material to the issues is not error. The admission of evidence not material to the issues made by the pleadings, against the objection of the adverse party, is error.

WATER RIGHT—DITCH—OWNERSHIP—NATURAL WATER CHANNEL.—The ownership of a ditch may be separate from any water right. One may adopt as a part of his ditch a depression, slough, or high-water channel, and have his right to the possession and use thereof protected the same as if such ditch had been wholly artificially made.

(Syllabus by the court.)

APPEAL from District Court, Cassia County.

Hawley & Puckett, for Appellant, cite no authorities on the points decided by the court.

John C. Rogers, for Respondents, files no brief in the case.

SULLIVAN, J.—This suit was brought to recover damages for the destruction of certain dams belonging to the plaintiff and to perpetually restrain the defendants from entering upon the land of the plaintiff and interfering with his dams and ditches. The answer is a denial of the material allegations of the complaint, and demands a dissolution of the temporary injunction then in force, that the complaint be dismissed, and for costs of suit. No affirmative relief is prayed for by the defendants. Certain questions were submitted to a jury, and the special verdict of the jury was adopted by the court upon the

questions submitted to them, and the court supplemented the same by certain other findings of fact. Judgment and decree were entered dissolving the temporary restraining order therein issued, and directing plaintiff and defendants to put certain boxes and headgates upon all points in Cow creek where they, or either of them, proposed to divert water from said creek, and enjoining the plaintiff from placing solid dams in the channel of said creek, or in any manner interfering with the flow of the waters therein belonging to either of the defendants. And plaintiff is also enjoined from diverting any of the waters to which the defendants are entitled from the channel of said Cow creek for any purpose whatever, and from conducting said water into Cassia creek. The plaintiff is also adjudged to pay the costs of this suit. This appeal is from the judgment.

The first error relied upon is that question numbered 5 submitted to and answered by the jury, and adopted by the court as one of its findings of fact, is not authorized or warranted by the evidence. Said question and finding is as follows: "Was it necessary for plaintiff to have dams in the channel called 'Cow Creek' to properly irrigate his land? Answer. No; he should have head gates." It is contended that that question should not have been submitted to the jury, for the reason that plaintiff alleged in his complaint that it was necessary to put dams in said creek in order to get water on plaintiff's land; that the answer does not deny that allegation, and hence must be considered and taken as true, under the provisions of section 4217 of the Revised Statutes, which declares that every material allegation of the complaint not controverted by the answers must, for the purpose of the action, be taken as true. And it is also contended that the evidence shows that dams were necessary. On an examination of the evidence we find that the witness Parke testified that, in order to throw the water out of said channel onto his land, it was necessary to put dams therein. Witness Charles Parke testified as follows: "In order to get water out onto Parke's meadow, it was necessary to build dams in these dry channels to throw it out." Witness E. Homer testified, "Mr. Parke cannot use his water on his meadow without putting dams in his ditch, and the dams are necessary for the

purpose of watering his meadow," and also that the water would not run on his (plaintiff's) meadow, except in very high water, without dams. Witness D. H. Homer testified to the same effect. Defendant Boulware testified that he removed the dams from the place where he (plaintiff) throws the water into his lateral ditches, and he also testified that he had removed plaintiff's dams three times, and that thereafter the dams would have to be repaired before plaintiff could get water through his ditches. H. Caldwell, witness for defendants, testified that plaintiff could not put water out in his meadow without the use of dams, and in the ordinary season of the year that dams were necessary to force water out through the laterals onto plaintiff's meadow. A. V. Caldwell, witness for the defendants, testified as follows: "I don't think Mr. Parke could get water out of Cow creek without putting dams in it." John Dennis, a witness for defendants, testified as follows: "Mr. Parke could not get water out onto his meadow without putting in these dams, and they were necessary in order to irrigate his meadow, and without these dams his ditches and water rights would be useless." The evidence is all one way on the point under consideration. There is no conflict. It is all to the effect that such dams are necessary. The special findings of the jury and court that such dams are not necessary have no evidence whatever to support it, and the allegation of the complaint that said dams are necessary is admitted by the answer. It was error to find that it was not necessary for plaintiff to have dams in the channel called "Cow Creek" to properly irrigate his land.

It is contended that the seventh finding of fact is not authorized or warranted by the evidence, and that it flatly contradicts the first finding of fact. By the first finding the jury found, and the court adopted such finding as its own, that the plaintiff did construct a ditch from Cassia creek, which is called "Parke's Ditch," some time in 1879; and by the seventh question submitted to the jury it is found that said ditch was not an artificial channel, but that the same was a natural channel. Witness King testified that he was acquainted with what is commonly called the slough on the Parke ranch; that it was only a high-water channel previous to 1879, and since then it has

been used as a ditch, and that between 1879 and 1885 it was used continuously as an irrigating ditch; that witness and a man by name of Chase in 1879 cut a channel from Cassia creek to said slough, and turned water into it. Witnesses Charles Parke, Abercrombie, E. Homer, D. H. Homer, Chase, Pierce, Rice, Caldwell and Scott all testified in effect that a ditch was cut from Cassia creek to said high-water channel and that water was run through said ditch into said channel. The evidence shows that said channel was used by the plaintiff as a part of his ditch, which ditch and old channel formed what some of the witnesses called Parke's ditch. The finding of the court that the conduit described in the complaint as plaintiff's main ditch and described in the answer as Cow creek is not an artificial ditch, but that the same is a natural water channel, is not sustained by the evidence, as the evidence without any conflict shows that said ditch was artificial in part and a natural slough or channel in part.

That part of this opinion in regard to the seventh finding of fact applies to the eighth finding of fact, as the last-mentioned finding is a repetition of the seventh finding.

The ninth finding is to the effect that defendants conducted water through said channel (plaintiff's ditch), and used it in the irrigation of their land. While defendants may have run some water through said ditch and channel, the record shows that Parke never recognized their right to do so. The defendant John Boulware testified as follows: "Parke has never recognized my right to use water through that slough, and has acted as if I had no right." He also testified that his predecessor in interest located the Chase waste water, and that he took it out at the lower dam after it had run over Parke's dam. Witness King testified to the same effect, and that defendants never had any interest in the water diverted by himself and Chase through what is designated as Parke's ditch, consisting of the artificial channel and the slough called by some of the witnesses Cow creek, save the waste water that ran off the ranch. We have searched the record in vain for any evidence in support of that finding of fact. E. Homer, who was the water master in that district, testified that he turned defendant's water through

plaintiff's headgate and ditch on one or two occasions, by plaintiff's special permission; that plaintiff objected to his doing so regularly, and for that reason he did not do so. For one season, at least, the defendants diverted their water through the old Billy Gwin ditch. That finding is not supported by the evidence.

The tenth finding, to the effect that respondents have used water through said channel since the year 1887, is not supported by the evidence, and the finding of the court that the respondents have used said channel for the purpose of conducting water to and upon their lands from and since 1881 is not supported by the evidence.

We have very carefully examined the eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth and seventeenth special findings of the jury, adopted by the court, and all of the additional findings made by the court upon the material issues in the case, and are of the opinion that not one of said findings is supported by the evidence. All of the findings of fact proceed upon the theory that the ditch and high-water channel adopted and used by the appellant as his ditch was a running stream, and all of the evidence shows that it was not. It was a high-water channel, which, in its natural condition, carried water only during the high-water period of Cassia creek. That plaintiff's predecessors in interest dug a ditch connecting it with said Cassia creek, put a dam in Cassia creek, and by means of said dam and ditch threw water into said channel during the time that the water in Cassia creek was low, or at its normal stage. The evidence clearly shows that dams were required in said channel to throw water into appellant's lateral ditches leading from said channel. Respondent John Boulware testified as follows: "I have removed his [appellant's] dams three times, and that was the cause of this injunction. The dams would have to be repaired before Mr. Parke could get water through his ditches." The evidence shows that appellant had a prior water right to that of respondents, and, in order to utilize it, had put dams in the high-water channel that he had used as a part of his main ditch; that respondent had torn out such dams and admits by the evidence above quoted that the dams, after he had

torn them out, must be repaired before appellant could get water through his ditches. The only purpose of this suit was to recover damages for said unlawful acts of·respondents, and to restrain them from again interfering with and tearing out his dams. The appellant had the prior right, had constructed his dams and ditches so as to utilize that right, and on that state of facts the respondents have no legal right to interfere in any manner with his dams or ditches. Much of the evidence shows that, if there is such a stream as Cow creek, it runs through the corner of appellant's land, and is not the slough or channel used by appellant as a part of his ditch. Appellant's land is above and up Cassia creek from respondent's land, and the water, after flowing over appellant's meadow, would naturally flow down toward respondent's land. The evidence also shows that appellant's ditch was composed partly of said high-water channel, which had been assessed to appellant and his predecessors since 1879, and that they have paid the taxes assessed thereon. The findings are uncertain and contradictory.

It is contended that the court erred in refusing to permit respondent John Boulware on cross-examination to testify whether he could appropriate and divert his water in other ways than through plaintiff's ditch. That was not an issue in this case, and, even if he could not divert his water except through appellant's ditch, he could not appropriate or use said ditch for that purpose without the consent of appellant, or securing that right in some lawful manner. The rejection of the testimony offered on that point was not error.

The action of the court in allowing respondents to introduce in evidence the decree in the case of *Darby v. Jones,* showing the amount of water decreed to the parties to this suit, and allowing to be introduced in evidence that part of said decree relating to the appropriation of water by one Caldwell from said Cassia creek, is assigned as error. The amount of water appropriated from said creek by either the respondents or said Caldwell was immaterial, so far as the issues of this case are concerned, and it was error for the court to allow said decree to be put in evidence on the trial of this suit. The material allegations of the complaint denied by the answer are: 1. The

ownership and use of the ditch and dams described in the complaint; 2. The cutting or destruction of said dams by the respondents; 3. The damage, if any, resulting to appellant from the cutting or removal of said dams by respondent; 4. And whether appellant is entitled to the injunction prayed for. So far as the issues made by the pleadings are concerned, it matters not whether the appellant owns any water right, as the law is well settled in this state that a ditch may be owned separately from a water right, and a water right separately from a ditch. If the appellant is the owner of the ditch and dams described in the complaint, the respondents have no legal right to interfere therewith in any manner, and have no right to run water through said ditch, except as hereinbefore stated, although a part of said ditch is composed of a slough or high-water channel.

In the oral argument of this case counsel for appellant contended that it was error for the court to submit this case to a jury, and that it had become quite prevalent in some districts of this state for courts to submit purely equitable causes to a jury. On an examination of the pleadings in this case we find it one for the recovery of damages alleged to result from the illegal acts of the respondents. The application for an injunction is auxiliary to the main case. This being primarily a law case, it was not error for the court to submit the question of damages to a jury. However, there seems to be a growing tendency in the trial courts of the state to submit divorce cases and purely equitable actions to a jury, in which the special verdict of the jury is only advisory to the court. We deplore this tendency, as it is creating a feeling that courts call juries in equity cases for the purpose of placing the responsibility on the jury, instead of the court accepting the full responsibility for the decisions in such cases.

For the reasons above stated, the court erred in not granting a new trial. The judgment of the trial court must be set aside, and the cause remanded, with instructions to grant a new trial; and it is so ordered. Costs of this appeal are awarded to the appellant.

Quarles, C. J., concurs.

Stockslager, J., took no part in the hearing or decision of this case.