441 P.2d 725

John E. KELLER and Frances J. Keller, his wife, and Alfred C. Keller and Roberta H. Keller, his wife, Plaintiffs-Appellants,

v.

MAGIC WATER COMPANY, Inc., a corporation et al., Defendants [Magic Water Company, Inc., respondent, and Kenneth W. Marshall, appellant].

MAGIC WATER COMPANY, Inc., a corporation, Cross-Claimant, Respondent,

v.

John E. KELLER and Frances J. Keller, his wife et al., Cross-Defendants [John E. Keller, et ux., and Alfred C. Keller, et ux., appellants, and Kenneth W. Marshall, appellant].

Nos. 9958, 9965.

Supreme Court of Idaho.

April 1, 1968.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for plaintiffs, cross-defendants and appellants Kellers (No. 9958).

Cunningham, Schwartz & Doerr, Twin Falls, for defendant, cross-defendant, and appellant Marshall (No. 9965).

Hepworth, Nungester & Felton, Buhl, for defendant cross-complainant and respondent Magic Water Co.

McFADDEN, Justice.

This action was instituted by plaintiffs John E. Keller and Alfred C. Keller and their wives to quiet title to certain waters of Salmon Falls Creek. Various parties were named as defendants, including appellant Marshall and respondent Magic Water Company. Respondent Magic Water Company answered and filed a cross-claim naming as cross-defendants the plaintiffs-appellants, appellant Marshall and others, who were also named as defendants in the Keller complaint.

The trial court entered its judgment and decree to the effect that respondent Magic Water Company has a prior and subsisting right to the waters of Salmon Falls Creek in the amount of 94.57 cubic feet per second (c. f. s.) with a priority date of May 2, 1953, subject only to its placing such water to a. beneficial use within the time allowed by their permit as amended, to-wit: May 2, 1970. After entry of judgment, an appeal

was taken by the Kellers (No. 9958). Marshall filed a separate appeal (No. 9965). This court ordered the appeals consolidated for briefing and argument.

In February 1953, the Evergreen Canal Company filed an application with the Idaho Department of Reclamation for a permit to appropriate 120 c. f. s. of the waters of Salmon Falls Creek for irrigation purposes. Notice of such application (I.C. § 42–203) was signed by the state reclamation engineer, service of which notice was acknowledged by the applicant. After more than forty days had elapsed, the application was approved by the state reclamation engineer, on May 2, 1953, and designated as "permit No. 24128." This permit provided that one-fifth of the work was to be completed on or before May 2, 1958. Magic Water Company is the successor in interest of the Evergreen Canal Company to permit No. 24128.

In the area involved herein, Salmon Falls Creek flows in a canyon from south to north. Magic Water Company constructed a dam across the creek in the bottom of the canyon, with a headgate near the west end of the dam. From this headgate a 48″ corrugated iron pipe carries water to a concrete division box in which boards can be placed to control the water. Out of this division box, a 36″ concrete pipe runs in a westerly direction to a junction box, west of the streambed, where another 36″ concrete pipe conducts water down to a series of electric pumps, designated as Pump System A (Unit A). There the water is pumped to the top of the canyon wall where it is discharged into a pond and from there distributed by canals to water users. When boards are not placed in the division box, water discharges out of the box back into the natural channel of the creek.

There is a spillway on the east end of the dam where water can flow in the spillway channel and then back into the natural creek bed.

Seven 200 h.p. pumps were first installed at Pump System A in 1956, with a later addition of six 600 h.p. pumps. Pump System B was installed in May 1965, near Pump System A, west of the streambed. A small coffer dam was placed in the stream and the pumps in System B fed from that water. These pumps also raised the water to the top of the canyon wall, where the water was discharged into the same pond fed by System A.

It was stipulated that Magic Water Company had expended $112,000 to November 2, 1955; between November 2, 1955, and May 2, 1958, the sum of $290,000; and total expenditures to time of trial of $471,000.

Proof of completion of works was submitted to the state reclamation engineer by Magic Water Company in April 1965, following which an inspection of the works was made and a certificate of completion of works was executed by the state reclamation engineer on September 20, 1965, which instrument certified that the works were adequate to divert and convey 94.57 cubic feet per second of water.

On three occasions between the filing of the application for permit and the issuance of the certificate of completion of works, upon application of Magic Water Company, extensions of time for completion of works were granted by the state reclamation engineer.

The state reclamation engineer in March 1963, upon respondent's application, approved an amendment of the land list in the permit. Upon respondent's application, which sought to have the description of the point of diversion changed because of an error in the original description, in July 1964, the permit was amended to reflect the correct point of diversion.

On January 12, 1959, appellant Marshall filed an application for permit to appropriate 25 c. f. s. of the waters of Salmon Falls Creek, which permit was approved by the state reclamation engineer on January 20, 1959, as permit No. 27711. This permit required that one-fifth of the work be completed by January 20, 1964. Marshall assigned his right to appropriate 12 c. f. s. under this permit to appellant John E. Keller. Other assignments were made at various

times by both Marshall and Keller. Following timely submission of proof under permit No. 27711, certificates of completion of works were issued in 1964, as follows:

To appellants Frances J. Keller and John E. Keller, et al, 10.5 c. f. s.

To appellant Marshall, 6.92 c. f. s.

To John W. Thomas (assignee of Marshall), 4.22 c. f. s.

August 12, 1964, the state reclamation engineer issued a license and certificate of water right to appellant Marshall for 6.92 c. f. s., with date of priority of January 12, 1959, for the lands described therein. On August 13, 1964, the state reclamation engineer issued a license and certificate of water right to the Kellers and Petersen for a total of 10.5 c. f. s., with priority date of January 12, 1959. Thereafter on December 5, 1964, John W. Thomas assigned his interest in Permit No. 27711 back to Marshall. No license or certificate of water right appears of record as to the 4.22 c. f. s. reassigned by Thomas to Marshall.

Although appellants Keller and Marshall separately appealed from the trial court's judgment and each filed separate briefs, the assignments of error of the respective appellants generally deal with identical issues. Hence the issues discussed herein are applicable to both the Kellers and to Marshall in their individual appeals.

Appellants (the term referring both to the Kellers and to Marshall, unless otherwise designated) assign as error the failure of the trial court to find that the original application for permit No. 24128, submitted by the Evergreen Canal Company, did not comply with the law. Appellants contend that the application for permit as filed by respondent's predecessor was fatally defective, because it did not contain any financial or other information regarding the incorporation or amount of stock of the applicant as required by I.C. § 42–202.

▆ On May 2, 1953, the application was approved and designated as permit No. 24128. The trial court found as a matter of fact, and such finding is uncontroverted,

that the Evergreen Canal Company failed to set out its financial condition upon the original permit. However, at the time of approval of the permit, the required notice of the application was forwarded to applicant. The application having been approved, and no showing to the contrary having been made, it is to be presumed that proof of publication of the notice was made as required by I.C. § 42–203, and that in passing upon the application the state reclamation engineer complied with statutory provisions concerning filing of protests to granting of the application. Mosman v. Mathison, 90 Idaho 76, 408 P.2d 450 (1965); Monson v. Boyd, 81 Idaho 575, 348 P.2d 93 (1959); Meservey v. Guilliford, 14 Idaho 133, 93 P. 780 (1908).

The record fails to disclose that any notice of deficiency in the application was ever served on the Evergreen Canal Company, or endorsed in the records of the Department of Reclamation. No timely objection was filed thereto as required by I.C. § 42–203. The trial court specifically found that no one was damaged by the omission of such financial information from the application. Appellants, whose appropriations have a priority date of January 20, 1959, appeared in the transactions at bar long after respondent Magic Water Company had expended large sums of money on the basis of the permit to appropriate.

▆ It is thus concluded that under the circumstances, appellants have no ground to contest the alleged defect in the original application for permit, upon which respondent now bases its arguments. In addition to the statutory requirements, which alone would constrain us to rule in favor of respondent on this issue, principles of equity militate against the requested declaration of forfeiture, which is now being sought for the first time eleven years after original approval of the application. See Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); Idaho Farms Co. v. North Side Canal Co., 24 F.Supp. 189 (D.Idaho 1938); Shive v. Barrow, 88 Cal.App.2d 838, 199 P. 2d 693 (1948); Ainsworth v. Roubal, 74

Neb. 723, 105 N.W. 248, 2 L.R.A.,N.S., 988 (Neb.1905).

A more complex question is presented by the assignments of error directed to the findings of fact, the conclusions of law, and to that portion of the decree which determined that the respondent's three extensions of time were properly granted by the state reclamation engineer. Extensions of time for completion of works and application to beneficial use under respondent's permit No. 24128 were granted by the state reclamation engineer in January 1958, extending the time from May 1958 to May 2, 1960; in March 1960, extending respondent's time from May 2, 1960 to May 2, 1963; and on April 1, 1963, extending respondent's time from May 2, 1963 to May 2, 1965.

I.C. § 42–204 authorizes the granting of extensions of time for completion of works. It prescribes the procedures to be used by the Department of Reclamation and states (prior to its amendment in 1963), in pertinent part:

"Provided, however, that in cases where the applicant is prevented from proceeding with his work by his failure to obtain necessary consent or final approval or rejection from the federal government because of the pendency of an application for right of way or other matter within the jurisdiction of the United States, or by litigation of any nature which might bring his title to said water in question, the department of reclamation upon proper showing of the existence of any such condition, and being convinced that said applicant is proceeding diligently and in good faith, shall extend the time so that the time caused by such delays shall be added to the time given in the original permit for each and every action required.

"Provided further, that the time for completion of works under any permit involving the construction of a reservoir of more than 200,000 acre feet capacity or for the appropriation of water to be impounded in such reservoir of more than 200,000 acre feet capacity, may upon ap-plication to the state commissioner of reclamation supported by a showing that additional time is needed on account of the time required for organizing, financing and constructing works of such large size, be extended by the state commissioner of reclamation for an additional period of five years, but not to exceed ten years in all from the date of permit, and that extension of time for completion of works under this proviso shall automatically extend the time for completion of the twenty per cent required to be done in half the time, and for making proof of application of water to beneficial use: provided, that no such extension shall be granted unless the applicant for such extension shall show that there has been actually expended toward the construction of said reservoir (including expenditures for the purchase of rights of way and property in connection therewith) at least $100,000."

I.C. § 42–204 was amended in 1963. S.L. 1963, Ch. 214, § 1, p. 618. This amendment authorized the state reclamation engineer to grant additional time for completion of works up to seven years (formerly five), but not to exceed a total of twelve years (formerly ten) in all from the date of the permit.

Respondent, in each application for extension of time, set forth detailed reasons explaining the basis for its request. The first application, dated January 10, 1958, was based on respondent's statutory explanation that there had been a two-year delay in completion because of difficulty in getting rights of way; that it would be necessary to institute condemnation proceedings for rights of way, but the condemnation proceedings could not be commenced until an irrigation district was organized; and that organization of the irrigation district had been withheld until patents were issued to desert land entrymen who farmed and irrigated the land. Appellants contend that no condemnation proceedings were instituted and that rights of way did not have to be obtained because 43 U.S.C.A. sec. 661 authorizes construction of a canal across pub-

lic domain without the necessity of any permit. Respondent argued in rebuttal that at the time, however, it intended to proceed pursuant to 43 U.S.C.A. §§ 946–949, to obtain rights of way.

Respondent's second petition for extension of time was dated March 11, 1960. The application recited as reasons for seeking the extension that it was necessary to build gauging stations; that litigation by shareholders delayed progress in the development of the project; and that complications and delays in acquiring necessary rights of way for roads, canals and other diversion facilities slowed development. Appellants contend that litigation is not a statutorily acceptable basis for granting an extension of time, and that the litigation in question did not finally materialize. They further claim that the extension bore no relation to the purported delays incurred.

Respondent's third petition for an extension of time was filed January 16, 1963, and was denied by the Department of Reclamation by letter dated February 12, 1963. I.C. § 42–204 was amended on March 25, 1963, to enlarge the class of applicants eligible to apply for an extension, and to extend the maximum time period allowable for extensions. Respondent's request was again submitted and reviewed and then approved April 1, 1963, by the state reclamation engineer, extending the time for completion of works to May 2, 1965. The reasons recited for requesting his third extension were concerned chiefly with the continued delaying effects of stockholder litigation, and the necessity for completing expensive pumping works already begun.

One of appellants' witnesses was the attorney for respondent during the period 1958–1960. He testified that he prepared respondent's first two applications for extensions of time, and that it was his purpose to request an extension of time to obtain a right of way across federal land for the purpose of constructing canals. As appellants correctly point out, respondent Magic Water Company never did institute any condemnation proceedings against any person for land or rights of way. The witness affirmed the failure of respondent to bring any condemnation action, and testified on cross-examination that the only litigation instituted by shareholders was one suit, in which judgment was rendered in January 1959.

Appellants thus argue that the extensions were improperly granted, both because the applications did not comply with the requirements of I.C. § 42–204 and because the reasons for requesting the extensions never materialized.

Appellants seem to imply that the failure of respondent Magic Water Company either to bring condemnation proceedings or to institute other litigation should be sufficient for the state reclamation engineer to have denied respondent's applications for extensions of time. By such reasoning, appellants would imbue the state engineer with sufficient prescience to foresee the precise course of events subsequent to the granting of the extension, at the time of submission of the application. We cannot accept this view.

The state reclamation engineer must rule on such applications at the time they are submitted; he has no way of knowing for certain whether the reasons cited in the application will materialize. He cannot, in other words, be made to predict the future with powers other than his own reason and judgment. Further, we ordinarily must vest the findings of the state engineer with the presumption of correctness. In Re Rights To Waters Of Barber Creek, 46 Nev. 254, 205 P. 518, reh. denied, 46 Nev. 354, 210 P. 563 (1922); Laramie Irr. & Power Co. v. Grant, 44 Wyo. 392, 13 P.2d 235 (1932). Although such findings do not take from the court the power to grant relief to a party whose rights may have been infringed, it is seldom that a court will interfere with the discretionary action of the state engineer upon matters involving the administration of the water laws of the state. Broughton's Estate v. Central Oregon Irr. Dist., 165 Or. 435, 101 P.2d 425, aff'd on rehearing, 165 Or. 435, 108 P.2d 276 (1940). As stated by

Mr. Justice Holmes, the state engineer is "the expert on the spot," Moyer v. Peabody, 212 U.S. 78, 85, 29 S.Ct. 235, 237, 53 L.Ed. 410, 416 (1909), and we are constrained to realize the converse, that "judges are not super engineers." Broughton's Estate v. Central Oregon Irr. Dist., supra. See Basinger v. Taylor, 30 Idaho 289, 164 P. 522 (1917); In Re Bassett Creek, Etc., 62 Nev. 456, 155 P.2d 324 (1945); In Re Right To Waters Of Barber Creek, supra; In Re Waters Of The Tualatin River And Its Tributaries, 229 Or. 81, 366 P.2d 174 (1961); Smyth v. Jenkins, 208 Or. 92, 299 P.2d 819 (1956); Deepwater Ry. Co. v. Honaker, 66 W.Va. 136, 66 S.E. 104, 27 L.R.A.,N.S., 388 (1909). The legislature intended to place upon the shoulders of the state engineer the primary responsibility for a proper distribution of the waters of the state, and we must extend to his determinations and judgment, weight on appeal. In Re Waters Of The Tualatin River And Its Tributaries, supra.

In the case at bar, it further appears that the reasons given by respondent Water Company in its applications for extensions of time, were in accord with the requirements of I.C. § 42–204(1), which permits extensions to be granted by the state engineer " * * * In cases where the applicant is prevented from proceeding with his work by his failure to obtain necessary consent or final approval or rejection from the federal government because of the pendency of an application for right of way or other matter within the jurisdiction of the United States, or by litigation of any nature which might bring his title to said water in question, * * *." Accordingly, we hold that the trial court did not err in its determination that the three extensions of time granted to Magic Water Company by the state reclamation engineer were proper.

Appellants argue that the amendment of July 15, 1964, changing the point of diversion of respondent's permit was invalid. The essence of their contention is that such amendment did not substantially comply with I.C. § 42–222 authorizing application for changes in point of diversion.

The original application for permit No. 24128 fixed a point of diversion which was not the actual place of diversion on the ground. The 1964 amendment was not a change in the point of diversion, but merely an amendment to the application to show the correct point of diversion. In actuality, only one point of diversion was ever intended to be described.

Respondent's point of diversion of its works was constructed by 1956, and was thus in physical existence and open to view three years before appellants obtained any permit to appropriate the waters of Salmon Falls Creek. The actual diversionary point having been in existence prior to the creation of any right or claim in appellants, appellants cannot now be heard to complain about the change of description of the true point of diversion. See Zezi v. Lightfoot, 57 Idaho 707, 68 P.2d 50 (1937); In re Department of Reclamation, 50 Idaho 573, 300 P. 492 (1931); Hall v. Blackman, 22 Idaho 539, 126 P. 1045 (1912).

Appellants raise the issue of whether respondent actually utilizes two separate and different points of diversion, the second point being subsequent in time and thus subsequent in priority to the rights established by themselves. Under appellants' theory, respondent's pumping Unit A, which received water diverted from the dam, discharges approximately 48 c. f. s. of water, and such discharge should be the limiting factor of respondent's rights as to amount of water and date of priority. Appellants assert that respondent's lower pumping unit (Unit B) located near Unit A, both of which are approximately one half mile downstream from the amended point of diversion, was constructed in 1965 and thus the diversion of the amount of water there is subsequent in priority to appellants' 1959 water rights.

The record indicates that when respondent's pumping Unit A is in operation, it discharges 48.26 c. f. s. of water, all of which comes from the diversion works or dam at

the described point of diversion. Magic Water Company diverts the entire stream of Salmon Falls Creek at the dam, and part of the water is conveyed to Pumping Unit A, through the pipeline previously described. Other water flows over the spillway back into the natural channel of Salmon Falls Creek. Respondent utilizes the natural channel as part of its transportation system to its lower pumps, Pumping Unit B, where it pumps the water up the side of the canyon.

Appellant contends that respondent's use of the natural channel to convey the water not discharged by Pumping Unit A to the lower pumps is indicative of two different points of diversion, i. e., the dam, as described in the permit; and the lower pumps, Unit B, installed in 1965. Despite the dam's diversion of the entire stream, appellants insist that because the flashboards, conduits and upper pumping units were found to be capable of discharging only 48.26 c. f. s., such figure is the limit of respondent's diversion entitled to the priority date of February 11, 1953. Respondent contends that its use of the natural streambed is an efficient and practical means of conducting the water. Respondent argues that its dam and two pumping units, even separated by location and time of construction, constitute but one diversion works, with the actual point of diversion being the dam.

I.C. § 42–105 states:

"The water appropriated may be turned into the channel of another stream and mingled with its water, and then reclaimed; and water may be turned into any ditch, natural channel or waterway from reservoirs or other sources of water supply, and such water may be substituted or exchanged for an equal amount of water diverted from the stream, creek or river into which such water flows, or any tributary thereof, but in reclaiming the water so mingled, or diverting water in lieu thereof from any such stream, creek, river or tributary, the amount of water to which prior appropriators may be entitled shall not be diminished, and due allow-

ance shall be made for loss by evaporation and seepage."

In addition to I.C. § 42–105, general authority supports respondent's contention that it may use the natural stream bed to transport that water not directly diverted to pumping Unit A, to the lower and newer pumps at Unit B. See Almo Water Co. v. Jones, 39 F.2d 37 (9th Cir.1930) ; Cascade Town Co. v. Empire Water & Power Co., 181 F. 1011 (C.C.D.Colo.1910) ; City of Los Angeles v. City of Glendale, 23 Cal.2d 68, 142 P.2d 289 (1943) ; Simons v. Inyo Cerro Gordo Mining & Power Co., 48 Cal.App. 524, 192 P. 144 (1920) ; Perkins v. Kramer, 121 Mont. 595, 198 P.2d 475 (1948) ; Rock Creek Ditch & Flume Co. v. Miller, 93 Mont. 248, 17 P.2d 1074, 89 A.L.R. 200 (Mont.1933) ; Herriman Irr. Co. v. Butterfield Mining Co., 19 Utah 453, 57 P. 537, 51 L.R.A. 930 (Utah 1899) ; Miller v. Wheeler, 54 Wash. 429, 103 P. 641, 23 L.R.A.,N.S., 1065 (1909). See also Bennett v. Nourse, 22 Idaho 249, 125 P. 1038 (1912) ; Parke v. Boulware, 7 Idaho 490, 63 P. 1045 (1901).

■ Similarly, this court has held that one may lawfully divert the entire flow of a stream as against junior claimants if the quantity of such flow is within the limits of his right and is necessary for the purposes for which the right was acquired. Lockwood v. Freeman, 15 Idaho 395, 98 P. 295 (1908) ; Drake v. Earhart, 2 Idaho 750, 23 P. 541 (1890) ; Malad Valley Irr. Co. v. Campbell, 2 Idaho 411, 18 P. 52 (1888). See Hutchins Idaho Law of Water Rights, p. 35.

■ Contrary to appellants' argument that Magic Water Company should be limited to the 48.26 c. f. s. discharged through pumping Unit A, there is no showing that the company intended to abandon its additional rights under the permit. The company's permit (with the extensions of time) authorized it to appropriate up to 120 c. f. s. of water, upon timely compliance with the requirements of completion of works and application to a beneficial use. Following submission of proof by respondent of completion of works on April 19, 1965, certificate of completion of works was issued on

September 20, 1965, and by law, upon proof of application to beneficial use, respondent's date of priority relates back to the initial date of its application for all waters beneficially used. Basinger v. Taylor, supra; Washington State Sugar Co. v. Goodrich, 27 Idaho 26, 147 P. 1073 (1915).

The trial court did not err in its finding of fact that Magic Water Company had only one diversion, nor did it err in its conclusion of law based on such finding. Respondent was entitled to use the natural channel of the creek to transport the water which it diverts further downstream to the point where its pumps can most advantageously discharge the water.

Appellant Marshall contends that the amendment to I.C. § 42–204, adopted in March 1963, is unconstitutional, because it extends the time for completion of work an additional two years and allegedly changes the class of applicants permitted to apply for the additional extension of time. He argues that the amendment is retrospective and thus unconstitutional as applied in the case at bar, because it applies to opposing parties who were pursuing rights which they had acquired pursuant to I.C. § 42–204 prior to the March 25, 1963, amendment. Impliedly, the added period given to respondent to complete its works limits appellants' own priority rights detrimentally.

With this argument we do not agree. The 1963 amendment to I.C. § 42–204 was equally applicable to appellants as to the respondent, and it constituted as to both, not a diminution of rights, but an extension thereof by permitting a longer time within which to make proof of completion of works.

Big Wood Canal Co. v. Chapman, 45 Idaho 380, 263 P. 45 (1927), is germane to the present argument. Therein junior appropriators contended that statutes which extended the time allowed for the application of water to beneficial use were retrospective in nature. They argued, as here, that legislation enacted in 1915, which granted additional time to persons or corporations owning irrigation systems covering more than 25,000 acres, was class legislation. The opinion states:

"* * * By application for permit under such statutes the permitee secures an inchoate right which will ripen into a legal and complete appropriation by compliance with the statutory steps. Such right is merely a contingent right, which may ripen into a complete appropriation, or may be defeated by a failure of the holder to meet the statutory requirements. The permit, therefore, is not an appropriation of the public waters of the state. It is not real property. It is merely a consent given by the state to construct and acquire real property. Speer v. Stephenson, 16 Idaho 707, 102 P. 365. One who makes a filing, or initiates a right with knowledge, on public waters of this state, subsequent to a previously initiated right, does so subject to such previously existing right, and the substitution by the Legislature of a different method of procedure for the perfection of such previously initiated rights, even to an extension of time in which such rights may be perfected, does not necessarily contravene any constitutional inhibition. These amendments only make more effective the remedy for the enforcement of a pre-existing right, without impairing the appellants' claims, for the respondent's predecessors could have, so far as we know, proceeded under the previous law, perfected their rights, and cut off the appellants' inchoate rights, as appellants' rights were at all times subject to the prior rights of the respondent's predecessor in interest. Appellants misconceive their rights which, have been subordinate to these of respondent at the time of their initiation and perfection, were not adversely affected by a subsequent change of law of procedure for perfecting respondent's superior rights. * * *." 45 Idaho at 402, 263 P. at 52.

Therein the court held:

"* * * Such statutes ought to be sustained as constitutional, because they

merely affect the remedy, and to the extent at least that they do not purport to affect actions already barred, they may be made to apply to rights that have arisen prior to their passage. City of Paragould v. Lawson, 88 Ark. 478, 115 S.W. 379; Hart v. Bostwick, 14 Fla. 162; Trimble v. Vaughn, 6 Bush (Ky.), 544; Mister v. McLean, 43 Miss. 268; Smith's Ex'rs v. Tucker, 17 N.J.Law 82; Bentinck v. Franklin, 38 Tex. 458; Cardell v. Carpenter, 43 Vt. 84; 12 C.J. 980." 45 Idaho at 398, 263 P. at 51.

In answer to appellants' contention that such legislation is class legislation, this court also stated in Big Wood Canal Co. v. Chapman, supra:

"* * * The legislature may lawfully distinguish, select and classify objects of legislation, and necessarily the power must have a wide range of discretion. If the classification is practical, that is sufficient, and it is not reversible unless palpably arbitrary. * * * In some cases, size may be an appropriate index so that discrimination may properly be made between large and small. 6 R.C.L. p. 389, § 381. * * * Both as to the time necessary to complete the application of water to beneficial use, and the detailed description of lands to which applede, there are reasonable differences which distinguish a large from a small irrigation project. The propriety and nature of legislation having to do with the procedure for perfecting rights to use the public waters of the state are peculiarly within the province of the Legislature, and there is nothing palpably unreasonable or arbitrary in the provisions of the act of March 12, 1915, upon which attack has been made * * *." 45 Idaho at 402, 403, 263 P. at 53.

Big Wood Canal Co. v. Chapman, in our opinion, is conclusive as to appellants' contention that the 1963 amendment to I.C. § 42–204 was either retrospective or class legislation, and therefore unconstitutional.

Appellants had no vested rights at the time the amendment was enacted and therefore cannot be said to have suffered from legislation which applies equally to themselves and respondent. See Ellison v. Tuckerman, 24 Colo.App. 322, 134 P. 163 (1913); Crom v. Frahm, 33 Idaho 314, 193 P. 1013 (1920); Speer v. Stephenson, 16 Idaho 707, 102 P. 365 (1909).

Appellant Marshall argues that respondent's 1963 application for extension of time was fatally defective, in that it failed to state that Magic Water Company had a diversion of more than 25,000 acre feet in one irrigation season for a project of not less than 5,000 acres, as required by I.C. § 42–204. Marshall contends that respondent's project was not capable of diverting more than 25,000 acre feet in one irrigation season.

An examination of the original permit as well as the certificate of proof of completion of works reveals that the lands listed on the permit, to which the water was to be applied, exceed 5,000 acres. Similarly, the permit shows that the proposed project when completed would divert more than 25,000 acre feet in one irrigation season, the permit being to appropriate 120 c. f. s. of water.

Marshall's argument is based on the capacity of the original pumping unit, Unit A, which was found to divert 48.26 c. f. s. However, as stated above, respondent's permit and the applications for extensions of time extended the period for completion of works to May 2, 1965, by which time the second pumping unit had been installed. The added capacity for diversion furnished by pumping Unit B, which capacity brought the combined diversionary capabilities of respondent's works to what was found to be 94.57 c. f. s., relates back in priority to the original permit and such 94.57 c. f. s. flow is sufficient to divert more than 25,000 acre feet in one irrigation season. The information provided in the permit must be considered as part of the application for the extensions of time, and the

information supplied in both documents should be taken together in determining whether the applicant met the prerequisites of I.C. § 42–204. There was substantial evidence to sustain the trial court's finding as to the acreage described in the permit. The trial court did not err in this regard or in its conclusion of law that the Department of Reclamation properly exercised its authority in granting the extensions of time.

Judgment affirmed. Costs to respondent.

TAYLOR, McQUADE, and SPEAR, JJ., and HAGAN, D. J., concur.