Argued March 14; reversed April 23; argued on rehearing October 16; former opinion adhered to December 17, 1940

In re Determination of Relative Rights to Use of Waters of Deschutes River

# BROUGHTON'S ESTATE *v.* CENTRAL OREGON IRRIGATION DISTRICT

(101 P. (2d) 425, 108 P. (2d) 276)

*Percy A. Cupper*, of Salem (DeArmond, Hamilton & Goodrich, of Bend, on the brief), for appellant.

*George H. Brewster*, of Redmond, and *George T. Cochran*, of La Grande (Cunning & Brewster, of Redmond, and Cochran & Eberhard, of La Grande, on the brief), for respondent.

BAILEY, J. This is an appeal by the estate of Clara L. Broughton, deceased, from an order and decree of the circuit court for Deschutes county reversing and setting aside an order of the state engineer extending to the estates of Clara L. Broughton, deceased, and George Broughton, deceased, the time within which to perfect the inchoate water rights decreed to the predecessor in interest of those estates.

As a preliminary to the discussion of the merits of the appeal it is necessary to dispose of the motion of the respondent Central Oregon Irrigation District to dismiss the appeal of the estate of Clara L. Broughton, deceased, to this court, and the motion of that estate to dismiss the appeal of Central Oregon Irrigation District to the circuit court from the order of the state engineer. This requires a review of such facts as have bearing upon the questions thus presented.

On February 10, 1928, the circuit court for Deschutes county entered its decree in the matter of the determination of the relative rights to the use of the waters of Deschutes river and its tributaries. That decree was thereafter modified by this court on appeal: 134 Or. 623, 286 P. 563, 294 P. 1049. The decree of the circuit court entered May 2, 1931, on the mandate of the supreme court, awarded to Odin Falls Land Company, predecessor in interest of the estates above mentioned, among other things, "a date of relative priority of January 7, 1909," for a specified number of cubic feet per second of water for the irrigation of 1,057 acres of land as an inchoate right, with time allowed

until and including October 31, 1935, in which to complete or perfect such right, or such further time as might be granted by the state engineer upon good cause shown.

Paragraph 65 of the decree last above referred to provides as follows:

"Certain claimants herein initiated rights of appropriation as described in preceding paragraphs, but have not perfected such rights. Such parties are entitled to a reasonable time in which to completely apply the water to a beneficial use. Such rights shall be perfected within the time which has been herein fixed in each case, or within an extension of such time which shall be allowed by the state engineer for good cause shown. Provided, however, at the time an application for extension is made to the state engineer, the party applying for such extension shall notify all interested parties. Upon the expiration of the time allowed for the completion of such inchoate rights, surveys of the land involved shall be made by the state engineer for the purpose of determining the extent to which such lands have been reclaimed and irrigated, and a supplemental order of determination shall be entered and filed with the circuit court limiting the rights of such parties to the quantity of water having been actually applied to beneficial use within the time allowed. Such supplemental order shall be reviewed by the court under proceedings the same as had upon the state engineer's original findings and order of determination. The extent to which such rights shall be deemed to be perfected shall be determined on the basis of the acreage which has actually been cleared and properly prepared for irrigation, and to which water has been beneficially applied in the production of crops, to the extent that such appropriations as have not been completed and perfected within the time allowed, each of such claimants shall be deemed to have waived and abandoned the right to any appropriation thereunder."

The decree further awarded to Central Oregon Irrigation District water rights with priority date preceding that of the inchoate rights granted Odin Falls Land Company. That company's rights were also subsequent in time to the perfected water rights and inchoate rights granted to the other claimants in the proceeding for determination of relative rights.

Prior to the expiration of the time granted by the decree of the circuit court to Odin Falls Land Company, to-wit, until October 31, 1935, Clara L. Broughton and the estate of George Broughton, deceased, successors in interest to Odin Falls Land Company, filed with the state engineer under date of September 9, 1935, an application for extension of time within which to perfect the inchoate rights granted to Odin Falls Land Company, which application was granted by the state engineer on November 8 of that year.

On September 29, 1938, the estates of Clara L. Broughton, deceased, and George Broughton, deceased, filed with the state engineer an application "for an extension of time within which to complete the necessary works and apply the water to a beneficial use", as to the rights granted to Odin Falls Land Company. Arnold Irrigation District joined the above estates in making that application. The reason given therefor was that Arnold Irrigation District had entered into a contract to purchase from those estates the inchoate rights granted to Odin Falls Land Company.

The applicants for an extension of time served notice of such application upon Central Oregon Irrigation District and upon all other claimants who had been awarded either perfected or inchoate rights to the use of waters of Deschutes river. The only claimant

who appeared at the hearing before the state engineer and filed objections to the granting of an extension of time was Central Oregon Irrigation District.

That district, respondent herein, in support of its motion to dismiss the appeal to this court, contends that the notice of appeal was not served upon all the adverse parties in the proceeding to determine the relative rights to the use of waters of Deschutes river. Section 7-503, Oregon Code 1930, cited and relied upon by the respondent irrigation district, provïdes that if an appeal is not taken at the time the order, judgment or decree is rendered or given, "then the party desiring to appeal may cause a notice, signed by himself or attorney, to be served on such adverse party or parties as have appeared in the action or suit".

The only decisions relied upon by the respondent are *In re Waters of Chewaucan River*, 89 Or. 659, 171 P. 402, 175 P. 421, and *Laur v. Walla Walla Irrigation Company*, 118 Or. 520, 247 P. 753. In the latter case, motion was made to dismiss the appeal on the ground that the water master for the county in which the lands involved were situated was not served with notice of appeal. All that the court therein decided was that the water master was merely a nominal party, not interested in the result of the appeal, and therefore not an adverse party and not required to be served.

In the first case above cited the appeal to this court was dismissed for the reason that the notice of appeal was not served on all the claimants who had filed statements or proofs of claim for adjudication of water rights, with the board of control, as then required, but only on those who had filed in the circuit court exceptions to the order of the board of control determining and establishing the several rights to the waters

of the stream concerned. This court, on petition for rehearing, said:

"We hold that when all other sections of the law have been complied with and under section 14 the claimant has made and filed his 'statement' or proof of claim, he then becomes an actor and submits himself and his water rights to the jurisdiction of the court, and thereby appears in court for the purpose of having his water right adjudicated and to obtain his water right certificate, and that any such a claimant has appeared in and is a party to the proceeding within the meaning of section 550 of the code [now § 7-503, *supra*]."

The only party who filed any objections or appeared before the state engineer to contest the application of the Broughton estates for an extension of time was the respondent irrigation district, and that irrigation district was the only party who appealed to the circuit court from the order of the state engineer granting the extension or appeared before that court on such appeal.

It has hereinbefore been pointed out that the inchoate right granted to the predecessor in interest of the Broughton estates was subsequent in date to all other rights included in the former adjudication of relative rights to the waters of Deschutes river. The granting of an extension of time to the Broughton estates, within which to complete the appropriation of water to a beneficial use under their inchoate right, could not in any way affect the adjudicated rights of other claimants.

In the Chewaucan case this court noted that the appeal was from the whole decree adjudicating the rights to use of waters of the Chewaucan river. With reference to adverse parties, the court observed:

"We will suppose that this appellant is successful in securing a modification of the decree, so that it will

acquire more water. If such is the result it will *pro tanto* lessen the amount which will flow down the stream and be open to future appropriation, not only to those parties who are served with notice, but also by those who are not served and who already have or may hereafter obtain access to the stream. The fact that appropriations for certain tracts of land, as related to all others involved, have been established by the decree does not deprive their owners of the right to make additional appropriations in the future, if water is there to be appropriated and can be applied to beneficial uses. This is true of both those below and those above any existing appropriator. Those below him are entitled to the water in excess of his appropriation; those above him are entitled, of course, to their original rights and also to appropriate water otherwise unappropriated and not necessary to fill his quota."

In contemplation of the foregoing excerpt, it may be said that all the other appropriators on the Deschutes river might, in regard to "the right to make additional appropriations in the future", be affected by the reversal of the circuit court's decree. However, those appropriators, with the exception of the respondent, did not appear in this proceeding, unless it can be said that because they appeared in the adjudication proceeding they are still in court for all purposes.

■ That part of the decree of the circuit court hereinbefore set out required an applicant for an extension of time to perfect his inchoate right to serve notice on all adverse parties. Such notice was served, and since none of the appropriators except the respondent irrigation district appeared to contest the application for an extension of time, it is our opinion that the appropriators who offered no objection cannot be considered as having appeared in this special proceeding, within the meaning of § 7-503, *supra*, and it was there-

fore not necessary for the appellant herein to serve upon them notice of appeal to this court. The motion to dismiss the appeal to the supreme court is therefore denied.

The motion of the Clara L. Broughton estate to dismiss the appeal of Central Oregon Irrigation District from the order of the state engineer to the circuit court is based on the following grounds: that the district is not an interested party to such proceeding and has no substantial rights involved; that the order of the state engineer dated February 27, 1939, granting an extension of time, is not a final order; that no appeal from such order is provided by statute; and that the making of such an order is discretionary with the state engineer and is therefore not appealable.

■ In view of that part of the decision in the Chewaucan case last above quoted, the irrigation district in the case at bar should be deemed an interested party, although its rights are prior to those of the Broughton estates, inasmuch as the refusal to grant an extension of time would make available to the district more water for future appropriation. Moreover, in serving the irrigation district with notice of the filing of application for an extension of time, the Broughton estates impliedly, at least, admitted that the irrigation district was interested in the action taken by the state engineer.

It is next urged that the order of the state engineer is not a final order, for the reason that the decree of the circuit court directs that upon the expiration of the time allowed for the completion of inchoate rights the state engineer shall make a survey of the land involved, for the purpose of determining the extent to which the land has been reclaimed and irrigated, and shall further make a determination of the quantity of

water which has actually been applied to a beneficial use within the time allowed. It is contended that since this supplemental determination is by decree of the court made reviewable by the court, no appeal lies from any order of the state engineer made pending such supplemental determination by him.

For the purpose of understanding clearly the question thus presented by the Clara L. Broughton estate, and in order hereinafter to consider the appeal before us on its merits, it is advisable to refer to numerous sections of the water code.

Subdivision 6 of § 47-403, Oregon Code 1930, provides as follows:

"The state engineer shall have authority, and shall for good cause, shown upon the application of any appropriator or user of water under an appropriation of water made prior to the passage of this act, or in the cases mentioned in subdivisions 3 and 5 of this section, where actual construction work has been commenced prior to said time or within the time provided in law existing at the time of filing this act in the office of the secretary of state, to prescribe the time within which the full amount of the water appropriated shall be applied to a beneficial use, and in determining said time shall grant a reasonable time after the construction of the works or canal or ditch, used for the diversion of the water, and in doing so shall take into consideration the cost of the appropriation and application of such water to a beneficial purpose, the good faith of the appropriator, the market for water or power to be supplied, the present demands therefor, and the income or use that may be required to provide fair and reasonable returns upon the investment. For good cause shown the state engineer may extend such time."

Section 47-306, Oregon Code 1930, provides that the state engineer shall execute the laws relative to

the distribution of water "and perform such other functions as may be assigned to him". Section 47-307, Oregon Code 1930, reads as follows:

"Any person, association or corporation who may deem himself, or itself, aggrieved by any order or regulation of the state engineer, shall have the right to appeal from the same to the circuit court of the county in which the property affected thereby, or any part thereof, is situated, which appeal may be carried from the circuit court to the supreme court, and which shall be governed by the practice in suits in equity."

■ If the state engineer was acting under the authority vested in him by subdivision 6 of § 47-403, *supra*, an appeal would lie to the circuit court from his order granting an extension of time to apply the appropriated water to a beneficial use. Any such order made by the state engineer would not be interlocutory in character, and an appeal could be taken immediately upon its being made. Otherwise, great hardship might result either to the applicant or to other appropriators.

■ It is urged by the Clara L. Broughton estate, however, that the state engineer's authority to extend the time was derived entirely from the circuit court's decree, which provided that the engineer might extend the time for good cause shown. We do not believe that the decree should be so interpreted. In our opinion, the state engineer was acting under the authority conferred upon him by subdivision 6, *supra*.

The views hereinabove expressed dispose of all the objections raised by the Clara L. Broughton estate to the jurisdiction of the circuit court to entertain the irrigation district's appeal from the order of the state engineer. The circuit court did not err in refusing to dismiss that appeal.

## ON THE MERITS

The decree of the circuit court, entered in 1931 on the mandate of this court, granted to the Broughtons, successors in interest of Odin Falls Land Company, until October 31, 1935, to perfect their inchoate right to appropriate water for irrigating 1,057 acres of land. That time was extended in November, 1935, until October 1, 1938, apparently without any objection made. It is admitted by the respondent in its brief that "the appellant must be awarded a water right to irrigate 145.5 acres of land heretofore decreed as irrigated".

In the application of the two Broughton estates, filed in September, 1938, it is stated, among other things, that in the year 1936 the investigations which had previously been carried on by the United States reclamation service relative to the irrigation of lands in that locality were completed, "indicating that the project would probably be constructed, in which event the acquisition of the Odin Falls rights" was "an essential incident"; that in 1937 the construction of the Deschutes project appeared assured and in September of that year an action was instituted in the circuit court for Deschutes county for the condemnation of the Odin Falls water rights; that the resultant uncertainty as to the acquisition of the Odin Falls water rights by Central Oregon Irrigation District caused the applicants "to suspend, to a large extent, the further development of this property for the reason that the cost of said development would be thereby increased without tangible advantage to the owners and to the definite disadvantage of the purchasers."

Numerous objections to the granting of an extension of time were filed by Central Oregon Irrigation District with the state engineer, which we do not deem

necessary to be mentioned here in detail. Hearings were held before the state engineer and on February 27, 1939, that official entered an order granting an extension of time to October 1, 1940. From that order we take the following statement of facts:

"Water for the irrigation of the lands in the Odin Falls ranch is diverted by means of a pump, belt-connected to a double propeller type turbine, and delivered to the lands through a 20-inch stave pipe. This water is delivered to the ditches by which it is carried to the lands at three main turn-outs located at elevations of about 60, 90 and 104 feet above the water surface at the pump intake. The length of the pipe-line to the 104-foot elevation is about 1,925 feet.

"The pumping plant, which appears to have been installed in 1920, when new and in good condition had capacity to deliver approximately 7.3 cubic feet per second through 1,925 lineal feet of 20-inch wood stave pipe against a static head of 104 feet. * * *

"It appears that the pumping plant and pipe-line have not been properly maintained and the maximum area irrigated in 1938 did not exceed 170 acres; that it will be necessary to install a new pumping plant and pipe-line if the irrigated area is to be materially increased, and that if the works now in place are to be continued in use considerable work and material will be required to place them in a reasonably serviceable condition.

"It appears that the plan for irrigating the land north of Crooked river in Jefferson county as set forth in the report of the United States reclamation service, dated July, 1936, provides for acquiring the water right awarded to the Odin Falls Land Company for power purposes and supplying electrical power for operating the pump. It also appears that the Central Oregon Irrigation District in September, 1937, filed a suit to acquire by condemnation all of the water rights awarded by the court to this company."

The original complaint filed by Central Oregon Irrigation District for condemnation of water rights does not appear to be in the record. There is in evidence the amended complaint, filed in the later part of 1938. In this amended complaint it is alleged that the plaintiff is an irrigation district operating an irrigation system, delivering water to approximately 48,000 acres of land in Deschutes, Jefferson and Crook counties, and that it is necessary for such district to acquire the right to use the water granted to Odin Falls Land Company, in order that sufficient water may be obtained to irrigate the lands within the boundaries of the district.

An answer to the amended complaint was filed by the heirs of Clara L. Broughton, deceased, and the proceeding is still pending in court.

The order of the state engineer concludes thus:

"Considering only the physical condition of the irrigation works and the area of land to which water had been beneficially applied, it would appear that the application for an extension of time should be denied. However, when these are considered, together with the pending condemnation suit and the possibility of the final result of this suit, the plan to acquire the water awarded for power purposes in connection with the irrigation of lands north of Crooked river, and all evidence submitted, it is the opinion of the state engineer that sufficient good cause has been shown to warrant the approval of the application."

■ We concur in the reasoning of the state engineer in granting the extension of time. It was known as early as July, 1936, from the report of the United States reclamation service, that it was contemplated to acquire the water rights awarded to Odin Falls Land Company, for power purposes. In September of the following year condemnation proceedings were

instituted by Central Oregon Irrigation District. That district offers the only opposition to the granting of the extension of time.

When the present proceeding was instituted the Broughton estates had remaining one year's time in which to consummate perfection of their inchoate rights. We cannot say to what extent completion of those rights was delayed or prevented by the report of the reclamation service, the negotiations by the irrigation district to purchase the Odin Falls water rights, and the subsequent institution of condemnation proceedings. Because of having hindered the Broughton estates in the development of their inchoate water rights, the irrigation district is not now in a position to complain of the delay.

It is not necessary to set forth what was actually done by the Broughton estates toward completion of their water rights, further than shown by the report of the state engineer, hereinabove quoted. We are of the opinion that the action taken by the state engineer in granting an extension of time should be upheld. The decree appealed from is reversed.

BEAN and KELLY, JJ., not sitting.

---

Petition for rehearing granted July 2; former opinion adhered to December 17, 1940

ON PETITION FOR REHEARING

(108 P. (2d) 276)

BAILEY, J. A rehearing was granted in this case at the instance of Central Oregon Irrigation District, respondent, in order that the court might have the benefit of further briefing and oral argument on certain matters stressed in the petition for rehearing.

The principal question involved is that of the correctness of the order of the state engineer granting to the estates of Clara L. Broughton, deceased, and George Broughton, deceased, an additional two years' extension of time in which to perfect the inchoate water rights decreed to Odin Falls Land Company, the predecessor in interest of those estates. The circuit court on May 2, 1931, entered a decree pursuant to mandate of the supreme court awarding to Odin Falls Land Company 176.17 second feet of water for the irrigation of 1,057 acres of land, as an inchoate right, with date of relative priority of 1909. Of this amount, the decree specified that 26.17 second feet should be used for irrigation and 150 second feet as power for pumping. Odin Falls Land Company was granted until October 31, 1935, in which to complete or perfect its inchoate right, and such further time as might be allowed by the state engineer.

Paragraph 65 of the decree hereinabove mentioned is quoted in full in our former opinion. Only the first part of that paragraph has bearing upon the present discussion, which part reads as follows:

"Certain claimants herein initiated rights of appropriation as described in preceding paragraphs, but have not perfected such rights. Such parties are entitled to a reasonable time in which to completely apply the water to a beneficial use. Such rights shall be perfected within the time which has been herein fixed in each case, or within an extension of such time which shall be allowed by the state engineer for good cause shown. Provided, however, at the time an application for extension is made to the state engineer, the party applying for such extension shall notify all interested parties."

Upon application of Clara L. Broughton and the estate of George Broughton, deceased, successors in

interest of Odin Falls Land Company, the state engineer granted to them a further extension of time until October 1, 1938. We are here concerned with the application filed by the estate named and the estate of Clara L. Broughton, deceased, for a further extension of time to October 1, 1940.

Attached to such application is the affidavit of their attorney, in which it is stated that certain irrigation districts and corporations have been served by mail with a copy of the notice of application for extension of time. The state engineer granted the extension of time, in an order reciting, among other things, that "the applicants gave notice to interested parties pursuant to paragraph 65 of said decree," and that Central Oregon Irrigation District had filed objections to the allowance of any additional time.

It is urged in the petition for rehearing that the statement made in our former opinion herein that all the interested parties were served with notice of the application was incorrect, in that the affidavit of the attorney for the applicants did not name as having been served all the individuals and corporations who had been granted either perfected or inchoate rights to the use of waters of the Deschutes river and its tributaries, and especially that some who had rights subsequent in time to those of Odin Falls Land Company and who would be affected by the granting of an extension of time had not been notified. The statement in our former opinion to which the respondent takes exception was based on the findings of the state engineer. It does not appear that the sufficiency of service of notice of the application for an extension of time was questioned at the hearing before the state engineer or in the circuit court.

In determining the effect to be given the state engineer's findings in acting upon an extension of time we shall consider in what capacity the state engineer performs the duties imposed upon him in that connection. That such action is administrative only is the contention of the respondent. In support of its position that additional testimony may be introduced in the circuit court on appeal from the order of the state engineer, the respondent, since the oral argument on rehearing, has submitted two additional briefs, in which it is urged that the state engineer is merely an administrative officer, without power to issue subpoenas or compel the attendance of witnesses; that it is his practice to consider matters that are not introduced in evidence before him; and that an appeal from his order "is equivalent to the starting of a suit in equity in the circuit court to test the justice and regularity of the order appealed from."

It is further stated in the brief that, "There is no opportunity for any party to make a record before the state engineer, except by the grace of that officer alone. As a matter of fact, the first place that an objector to an order of the state engineer has a chance to make a record is on appeal, when the cause first enters a court of record."

■ In passing upon an application for an extension of time the state engineer acts pursuant to the authority conferred upon him by subdivision 6 of § 47-403, Oregon Code 1930. By the provisions of that subdivision, any appropriator desiring an extension of time is required to file his application with the state engineer. Nowhere in the statute is there any provision setting forth definitely what the application shall contain. The law itself does not specify that the application shall be served upon any one, although paragraph 65, *supra*, requires

that notice of filing the application be served upon all parties who would be affected by the granting of an extension of time. Section 47-403, *supra*, contains no provision, nor has any been called to our attention, which requires the engineer, when passing upon an application, to take and preserve evidence, as is required of him in the adjudication of water rights. In determining whether an extension of time should be granted the state engineer is not limited to evidence which may be presented on a hearing before him. He may make his own investigation of the premises and the circumstances involved in any request for such extension.

■ The Oregon water code (Title XLVII, Oregon Code 1930) does not specify the procedure to be followed by the state engineer in determining whether an extension of time shall be granted. In proceedings before him the parties are not designated as plaintiffs and defendants or othewise as litigants. There may not, in fact, be any one opposing the application for an extension of time, yet it is the state engineer's duty to go into the facts and grant or deny the application. If he denies it, the appropriator seeking an extension of time is given the right to appeal to the circuit court. When the matter is there presented it must be in the form of a justiciable controversy between adverse parties.

This court, in the case of *In re Willow Creek*, 74 Or. 592, 610, 144 P. 505, 146 P. 475, in discussing the question whether the water code, in conferring certain powers upon the water board and its members, violated Article III, § 1, of the Oregon constitution, relating to the division of government into three separate departments, stated:

"The statute prescribing the duties to be performed by the water board and its members in their respective

official capacities in a determination of water rights does not confer judicial powers or duties upon the board or such officers in any sense as indicated by the constitution. Their duties are executive or administrative in their nature. In proceedings under the statute the board is not authorized to make determinations which are final in character. Their findings and orders are *prima facie* final and binding until changed in some proper proceeding. * * * It might be said that the duties of the water board are quasi-judicial in their character. Such duties may be devolved by law on boards whose principal duties are administrative. * * *

"Many executive officers, even those commonly known as purely administrative officers, act judicially in the performance of their official duties, and in so doing do not exercise judicial powers as the words are commonly used and as they are used in the organic act in conferring judicial powers upon specified tribunals: [Authorities.]"

The opinion then pointed out that in Washington it had been held that the public utilities act of that state did not confer judicial or legislative power upon administrative officers, and that similar rulings had been made in Oregon and other states.

The supreme court of Idaho, in *Speer v. Stephenson,* 16 Idaho 707, 102 P. 365, a case involving the cancelation of a water permit by the state engineer, observed:

"The inquiry, then, is: Does the act of March 11, 1909, give to the state engineer judicial power? If, under the constitution, the legislature may regulate the manner and means of appropriating the public waters of the state, and give to the state engineer the power and authority to grant permits upon applications being made in proper form, we can see no reason why the legislature may not also vest the state engineer with power to cancel such permit when it is shown to him and he ascertains from personal examination that the permit has not been complied with. The granting as well as the

cancelation and voiding of permits are acts of administration and clearly within the power which may be given to the state engineer in supervising and administering the law regulating the appropriation of the public waters.

"While it is true the state engineer is called upon to exercise his judgment and decide whether the holder of the permit has complied with the law, this fact alone would not make his acts judicial. All administrative officers are called upon at times to exercise judgment and to decide questions, but, when the judgment is exercised as a means of administering the law, the act is administrative rather than judicial."

In *Crawford Co. v. Hathaway*, 67 Neb. 325, 93 N. W. 781, 60 L. R. A. 889, 108 Am. St. Rep. 647, it was held that the duties of the state board of irrigation "are supervisory and administrative in character, and not judicial. While it may be true that they are given powers of a quasi-judicial character, this of itself does not constitute them a judicial body, nor does it have the power of conferring upon administrative bodies the exercise of judicial functions in contravention of constitutional provisions. * * * Powers of the same general nature and character are conferred upon almost every administrative body known to the statute, and regarding which it has frequently been decided they are of a quasi-judicial nature; and yet such bodies are invariably held to be administrative, and to in no way conflict with the constitutional provisions regarding officers and bodies upon whom judicial power may be conferred."

See also, in this connection: *Farmers' Irrigation District v. Frank*, 72 Neb. 136, 100 N. W. 286; *Farm Investment Company v. Carpenter*, 9 Wyo. 110, 61 P. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918; *Evanhoff v. State Industrial Accident Commission*, 78 Or. 503, 515,

154 P. 106; Wiel, Water Rights in the Western States, 3d Ed., § 1192.

Section 47-307, Oregon Code 1930, provides that any person, association or corporation aggrieved by any order or regulation of the state engineer "shall have a right to appeal from the same to the circuit court . . . which appeal may be carried from the circuit court to the supreme court, and which shall be governed by the practice in suits in equity."

That section is an amendment of § 5, chapter 216, General Laws of Oregon 1909, which chapter is known as the water code of the state of Oregon. Section 5 as originally enacted gave to any person, association or corporation aggrieved "by any such order or regulation of such division superintendent" the right to appeal from the same to the board of control, which board was composed of the state engineer and the superintendents of water divisions Nos. 1 and 2, by filing with that board "a copy of the order or regulation complained of and a statement of the manner in which the same injuriously affects the petitioner's interest". Section 5 further specified that the board should, after due notice, hear whatever testimony might be "adduced by the petitioner, either orally or by affidavit," and should have "power to suspend, amend or confirm the order complained of."

In 1919 the legislature provided that the superintendent of water division No. 2 should thereafter be known as the state water superintendent, and abolished the office of superintendent of water division No. 1: Chapter 94, General Laws of Oregon 1919. This act also changed the name of the board of control above mentioned to "state water board" and provided that the state engineer and the state water superintendent should constitute such board.

Section 5 of chapter 94, *supra,* amended § 5 of the 1909 act and granted the right to appeal from the order or regulation of the state engineer or state water board to the circuit court and thence to the supreme court.

In 1923 the legislature abolished the state water board and the office of state water superintendent, by chapter 283, General Laws of Oregon 1923. That act conferred upon the state engineer all the duties of the state water board and the state water superintendent, and in addition further amended § 5 of the original act of 1909 (then codified as § 5701, O. L.) so as to read as now appearing in § 47-307, *supra.*

■ From this recital of the history of the act it is manifest that the legislature intended that there should be, under the law as it now stands, a right of review in the courts "of any order or regulation of the state engineer by any person, association or corporation aggrieved". The statute, however, does not set forth the procedure to be followed on any such appeal, except to state that the appeal "shall be governed by the practice in suits in equity."

■ In granting the right to any one aggrieved to appeal to the circuit court, the legislature did not, in our opinion, intend by the use of the word "appeal" to indicate that judicial power had been conferred upon the state engineer or that such appeal should be as from one judicial tribunal to another. The word "appeal" has "no absolutely fixed and definite meaning," but may be used to denote the review by a court of the action of some board or administrative officer: *Nash v. City of Glen Elder,* 74 Kans. 756, 88 P. 62.

In *Moynihan's Appeal,* 75 Conn. 358, 53 Atl. 903, it was contended that the act there involved gave a right of appeal from the commissioners' rejection of an ap-

plication for a license and was void, in that it imposed upon the superior court the purely administrative powers and duties of an administrative board. In considering that question the court stated:

"It is a sufficient answer to this claim, that the construction thus given to the provision for an appeal can not be maintained. It is well settled that the legislature can not give the superior court appellate jurisdiction of this kind in matters committed to executive officers. In certain instances, where appropriate process is provided, the court may set aside acts of administrative officers for unlawful conduct in excess of their power. Such process for controlling the unlawful conduct of county commissioners, in granting or refusing licenses, has been provided by the legislature under the name of 'appeal.' * * * The word 'appeal,' as thus used, has been construed as providing for original application to the superior court to exercise its appropriate judicial power in respect to acts done by the county commissioners in excess of their power, or in the abuse of that power. 'Such appeal is a process by which the superior court is enabled to determine the legality of certain specified actions of the county commissioners.'"

In *United States v. Ritchie*, 58 U. S. 525, 15 L. Ed. 236, the contention was made that an act of congress prescribing that an appeal to the district court of the United States from the decision of the board of commissioners to settle private land claims in California was unconstitutional, in that the board as organized was not a court under the constitution and could not, therefore, be invested with any of the judicial powers conferred upon the general government. In disposing of this argument, the court said:

"But the answer to the objection is, that the suit in the district court is to be regarded as an original proceeding, the removal of the transcript, papers, and evidence into it from the board of commissioners being

but a mode of providing for the institution of the suit in that court. The transfer, it is true, is called an appeal; we must not, however, be misled by a name, but look to the substance and intent of the proceeding. The district court is not confined to a mere re-examination of the case as heard and decided by the board of commissioners, but hears the case *de novo*, upon the papers and testimony which had been used before the board, they being made evidence in the district court; and also upon such further evidence as either party may see fit to produce."

See also, in this connection, *United Fuel Gas Co. v. Public Service Commission*, 73 W. Va. 571, 80 S. E. 931.

The workmen's compensation law, § 49-1843, Oregon Code 1930, grants a right of appeal from the final order of the industrial accident commission to the circuit court. In all instances of such resort to the circuit court it has been the practice to treat the "appeal" as the institution of a new proceeding, in which there are parties plaintiff and defendant and issues are presented.

█ In our opinion, the legislature intended, in granting an aggrieved party the right to appeal, to give such party the right to a review by the courts of the order of the state engineer. The "appeal" contemplated by the statute should be regarded as an original proceeding in the circuit court. In providing that such appeal "shall be governed by the practice in suits in equity", the legislature must have intended that the matter should be tried in the same manner as a suit in equity originally instituted in the circuit court.

█ The function of the circuit court in reviewing an order of the state engineer is limited to determining whether the acts of that officer are within the authority conferred upon him and whether such acts are arbitrary

or not justified by the facts. The court is not granted the power to substitute its judgment for that of the engineer. In other words, the statute does not confer upon the court administrative duties that are imposed by law upon the state engineer. It is doubtful that a contrary construction of the statute would be in consonance with Article III of the Oregon constitution, which provides that the powers of the government shall be divided into three separate departments. See *Keller v. Potomac Electric Company*, 261 U. S. 428, 67 L. E. 731, 43 S. Ct. 445.

■ The findings of the state engineer are entitled to the presumption of correctness, but they do not take from the court the power to grant relief to a party whose rights may have been infringed by the state engineer: *In re Waters of Barber Creek*, 46 Nev. 254, 205 P. 518; *Laramie Irrigation & Power Co. v. Grant*, 44 Wyo. 392, 13 P. (2d) 235; 22 R. C. L. 472. Much of the work imposed upon the state engineer is of a technical nature and demands special skill and experience of that officer. The state engineer is, in the language of the late Mr. Justice Holmes, "the expert on the spot": *Moyer v. Peabody*, 212 U. S. 78, 53 L. E. 410, 29 S. Ct. 235.

■ The state engineer found that all the interested parties had been given notice of the filing of the application by the Broughtons for an extension of time. The affidavit of the attorney for the applicants setting forth the names of the parties served does not show the names of all those to whom water rights were awarded by the decree of the circuit court entered on our mandate. To determine who are the interested parties, however, the state engineer is not limited to the showing made by the affidavit. He is entitled to make his own

independent investigation. It may possibly be that some of the appropriators who were granted inchoate rights have lost such rights, and other rights may have been transferred prior to the filing of the application here involved. Those are matters peculiarly within the knowledge of the state engineer or easily ascertainable by him.

 It has hereinabove been pointed out that the sufficiency of the service of notice was not questioned in the circuit court or even, so far as the record discloses, in the original hearing before the state engineer. Without any showing to the contrary in the record before us, we must treat as *prima facie* correct the finding of the state engineer that the interested parties had been served with notice of the application. And it is a fair construction of such finding to interpret ''interested parties'' as meaning all parties who might be affected by the granting of the application for an extension of time. The objection to the sufficiency of service, made for the first time on appeal to this court, comes too late, in view of the *prima facie* correctness of the engineer's finding in that respect.

Section 47-403, subdivision 6, *supra,* provides that the state engineer shall have authority, ''for good cause, shown upon the application of any appropriator'' of water when actual construction work has been commenced within the time required by law, to prescribe the time within which the full amount of water appropriated shall be applied to a beneficial use, and that in determining such time he ''shall grant a reasonable time after the construction of the works or canal or ditch, used for the diversion of the water, and in so doing shall take into consideration the cost of the appropriation and application of such water to a bene-

ficial purpose, the good faith of the appropriator, the market for water or power to be supplied, the present demands therefor, and the income or use that may be required to provide fair and reasonable returns upon the investment." He is further granted authority to extend such time on good cause shown.

From the photographs introduced as exhibits and the testimony in the case it is apparent that Odin Falls Land Company and its successors in interest have expended large sums of money in constructing flumes, ditches, a dam and a pumping plant. Some of the flumes, at the time of the hearing, were not in good repair. The dam was leaking and the pumping plant was not working at full capacity.

It is conceded by the respondent that the Broughton estates now have a perfected right to water for the irrigation of 145.5 acres of land. It is apparent, however, that during the last few years very little has been done by those estates to clear additional land and put it under irrigation, although some attention has been given to the repairing of the pumping plant and flumes.

The state engineer extended the time from that allowed by the decree of the circuit court (expiring October 31, 1935) to October 1, 1938, to which extension no objection appears to have been raised. Before this extension expired and in September, 1937, a proceeding was brought by Central Oregon Irrigation District for condemnation of the lands and water rights of the Broughton estates, which proceeding is yet pending. That district is the only objector to the extension of time last applied for by the Broughton estates.

■ In determining the extension of time to be granted for applying water to a beneficial use, the state engineer should, and in this instance undoubtedly did,

take into consideration the investment theretofore made in the construction of diversion and distribution works and in preparing land for irrigation, also the good faith of the appropriator as demonstrated by the investment already made and that made after the granting of the last preceding extension of time, and other matters set forth in § 47-403, hereinbefore quoted.

■ In view of the large investment of the Broughton estates and their predecessor in interest, the litigation involved in the determination of their right to the use of water, as evidenced by the adjudication proceedings (*In re Water Rights of Deschutes River,* 134 Or. 623, 286 P. 563, 294 P. 1049), the litigation instituted by the Broughton interests against the respondent herein and others to prevent detrimental diversion of waters (*Broughton v. Stricklin,* 146 Or. 259, 28 P. (2d) 219, 30 P. (2d) 332), which was not terminated in this court until March 13, 1934, the improvements made by the Broughtons and their predecessor in interest, the pendency of the condemnation proceeding instituted by Central Oregon Irrigation District, the only objector to the application for an extension of time, and the report issued by the United States reclamation service in 1936, it cannot be said that the state engineer acted arbitrarily or without justification in allowing the last two years' extension of time requested by the Broughton estates.

■ In our original opinion we stated that it was known as early as July, 1936, from a report of the United States reclamation service, that acquisition of the water rights of Odin Falls Land Company by others was under contemplation. The respondent, in its brief on rehearing, asserts that it does not believe that the state engineer or the court had any right to consider re-

ports not placed in evidence. The statement by this court above mentioned was based on the findings of the state engineer, and, as we have already pointed out, that officer is not limited, in determining whether an extension of time should be granted, to the evidence introduced before him. Moreover, no evidence was offered in the circuit court contradicting that finding of the state engineer.

Exception is taken to our original opinion in numerous other respects, and in order that there may be no misunderstanding and that certain statements therein made may not be considered as binding upon the parties to this litigation we make the following explanation: The statement that the inchoate rights granted to the predecessor in interest of the Broughton estates were subsequent in date to all other rights included in the former adjudication of the relative rights to waters of the Deschutes river does not seem to be borne out by the decree entered in the circuit court on the mandate of this court. That decree was not before us at the time of the former hearing, and the statement in our opinion was made in accord with what we then understood to be the facts. The further statement that the granting of an extension of time to the Broughton estates within which to complete the application of water to a beneficial use could not in any way affect the adjudicated rights of other claimants, it now appears, may possibly have been incorrect, if the amount of water in the Deschutes river is insufficient to supply such latter rights in the amounts specified by the decree.

■ Application has been made by the city of Redmond for permission to intervene in this appeal. In its petition it asserts that it was not served with notice of

the filing of the application by the Broughtons for an extension of time and apparently desires this court to determine whether or not it was served, by considering evidence other than that presented before the state engineer or the circuit court. This is an appellate court and not a court of original jurisdiction except in specific instances, of which this is not one. Therefore, the petition to intervene must be denied.

The state engineer extended to October 1, 1940, the time within which the Broughton estates should perfect their water rights by applying the water to a beneficial use. That time is now past. On the oral argument on rehearing it was stated by attorneys for Central Oregon Irrigation District that an application for a further extension of time might be granted, even though not filed until after expiration of the last preceding extension. This seems to be the view also of attorneys for the appellant, and in it this court likewise concurs. Any such application for an extension of time beyond October 1, 1940, must be presented to the state engineer and be passed upon by him in the first instance, rather than by this or the circuit court.

We adhere to our former opinion reversing the decree of the circuit court. The cause is remanded to that court, where further proceedings may be had in accordance with this and the former opinion in this case. The appellant will recover costs in this court.

RAND, C. J., and KELLY and LUSK, JJ., concur.

BEAN, J., not participating.

———

ROSSMAN, J. (specially concurring). I concur in the conclusion reached by the majority, but not in its reasoning. The majority hold that when the state engineer passes upon an application for an extension of

time, he acts in a purely administrative capacity, but that, nevertheless, an appeal may be taken from his order to the circuit court. It further holds that, although our statute (§ 47-307, Oregon Code 1930) provides that the appeal "shall be governed by the practice in suits in equity," nevertheless, the court "is limited to determining whether the acts of that officer are within the authority conferred upon him and whether such acts are arbitrary or not justified by the facts." Although the majority make the statement just mentioned, they seem to accept the respondent's assertion: "There is no opportunity for any party to make a record before the state engineer, except by the grace of that officer alone. As a matter of fact, the first place that any objector to an order of the state engineer has a chance to make a record is on appeal, when the cause first enters a court of record." That being the situation, it is impossible to conceive how the circuit court can determine whether the state engineer acted arbitrarily or otherwise. The majority say it must be presumed that the state engineer acted correctly. Before going on, it is pertinent to observe that when equity practice is followed the court is not limited to a finding whether the tribunal from which the appeal was taken acted arbitrarily; the cause is tried *de novo*.

From 3 C. J., Appeal and Error, § 129, at page 373, the following is quoted: "It has repeatedly been held that an appeal cannot constitutionally be allowed to the courts from the purely ministerial or administrative action of such a board." The reference was to administrative agencies. Many authorities are cited in the section's footnote in support of the statement just quoted. In 4 C. J. S., Appeal and Error, § 47, at page

132, the same statement is made and in its support several recent decisions are cited. The doctrine of the separation of powers, whereby the functions of governmental authority are deemed segregated into their legislative, judicial and executive component parts, renders it impossible for courts to entertain appeals from any action of a department of the government which was not exercising judicial powers at the time when the challenged decree was entered. It is not essential that the body from which the appeal was taken had the word "court" or the word "judicial" in its name. Nor is it essential that that body never exercised anything but judicial functions. Mr. Justice BEAN, in *In Re Willow Creek*, 74 Or. 592, 144 P. 505, 146 P. 475, from which the majority quote, pointed out that even courts at times exercise legislative and executive powers. The intermingling in the administrative bodies of executive, legislative and judicial powers is dwelt upon extensively in the two following treatises: Report of the Subcommittee on Administrative Law to the American Bar Association (61 Reports of American Bar Association (1936) 720) and Report of Committee on Administrative Agencies and Tribunals of the Section of Judicial Administration (63 Reports of American Bar Association (1938) 522, at 623). Thus, it is not essential that the tribunal from which the appeal is taken is purely judicial; but it is essential that when the tribunal acted it was exercising judicial powers.

I am satisfied that when the state engineer exercised the authority conferred upon him by paragraph 6 of § 47-403, Oregon Code 1930, he exercised judicial power. That section of our laws follows:

"The state engineer shall have authority, and shall for good cause, shown upon the application of any ap-

propriator or user of water under an appropriation of water made prior to the passage of this act, or in the cases mentioned in subdivisions 3 and 5 of this section, where actual construction work has been commenced prior to said time or within the time provided in law existing at the time of filing this act in the office of the secretary of state, to prescribe the time within which the full amount of the water appropriated shall be applied to a beneficial use, and in determining said time shall grant a reasonable time after the construction of the works or canal or ditch, used for the diversion of the water, and in doing so shall take into consideration the cost of the appropriation and application of such water to a beneficial purpose, the good faith of the appropriator, the market for water or power to be supplied, the present demands therefor, and the income or use that may be required to provide fair and reasonable returns upon the investment. For good cause shown the state engineer may extend such time.''

It is unnecessary in this opinion to review that section, phrase by phrase, in order to indicate that a compliance with its requirements demands the exercise of judicial powers. It is sufficient to point out that when the state engineer exercises the power conferred upon him by that section, he is dealing with valuable property rights, and that the legislature intended that before reaching a conclusion he should ascertain the attendant facts and then exercise what the layman would call sound judgment, but which we must term judicial judgment; that is, be governed by the facts and refrain from arbitrary action. The legislature even went so far as to render the exercise of his judgment subject to review, not only in the circuit court, but also in this court. It added that the process for obtaining a review was not by the institution of a suit, but by the process of appeal. These circumstances per-

suade me that the act clearly vests in the state engineer judicial powers.

Legislative functions consist of prescribing rules for the government of action which the legislature anticipates will be pursued in the future. The making of railroad rates is a good example. Judicial action is based upon the opposite. The conduct has already taken place and now someone claims that what was done created a liability in his favor. The judicial function consists of ascertaining the facts and applying the law to them. Administrative functions generally deal purely with the present; that is, someone applies for a license, an appointment to an office or seeks delivery to him of a warrant. In those instances no discretion is involved. The applicable statutes have pointed out the course to be pursued by the official. This brief description of the nature of the three functions renders it clear that when the state engineer passed upon the application for the extension of time he was performing judicial duties. He could not grant the extension of time in the manner contemplated by the statute without having first ascertained what the parties had done in the past. It was his duty under the statute to retrace the steps pursued in the past by the applicant, and, having acquainted himself in that manner with what the applicant had done or had omitted to do, determine whether an extension of time was warranted. It appears to me clear that the state engineer, when he granted the extension of time, was not exercising an administrative function, but a judicial one. When the majority say that the state engineer performed only an administrative function, but that, nevertheless, an appeal was permissible, it appears to me that they are needlessly distorting a well-established

principle of law. It is true that the majority claim that when the legislature employed the term "appeal" it really meant something else. Neither *United States v. Ritchie,* 58 U. S. 524, nor *Moynihan's Appeal,* 75 Conn. 358, support the majority. In the former, the appeal was taken from a board of land commissioners upon which Congress had conferred power to settle some private land claims in California. The board was, in fact, a judicial tribunal, and the decision so regarded it in sustaining the act which authorized appeals from its findings. *Moynihan's Appeal* expressly mentioned two Connecticut statutes (Public Acts of 1893, Chap. 175, and Public Acts of 1899, Chap. 223) which defined the word "appeal" as employed in authorizing appeals from administrative bodies of the kind mentioned in the decision in Moynihan's case. Next, the majority's holding that appeals taken from the decisions of the state engineer, although governed by equity rules as the statute provides, are nevertheless, limited to a determination whether the engineer acted arbitrarily, places upon the procedure pursued in courts entertaining appeals from administrative bodies a limitation which is not mentioned in the statute and which is bound to be embarrassing.

I concur in the result, but dissent from the reasoning.