Argued May 7, affirmed July 11, 1956

SMYTH ET AL *v.* JENKINS ET AL
299 P. 2d 819

*Pat H. Donegan,* Burns, argued the cause and filed briefs for appellants.

*James M. Burns,* Burns, argued the cause and filed a brief for respondents.

Before WARNER, Chief Justice, and TOOZE, LUSK, BRAND and PERRY, Justices.

TOOZE, J.

This is an appeal by D. H. Smyth and E. H. Smyth from a portion of a decree of the circuit court for Harney county involving certain water rights. The case originated in the office of the state engineer pursuant to the provisions of the Water Code of this state, and an appeal was taken to the circuit court from the order of the state engineer. The circuit court affirmed the order.

Upon the hearing before the state engineer, as well as on the trial in the circuit court, D. H. Smyth and E. H. Smyth were designated as the protestants, and Thomas E. Jenkins and Richard J. Jenkins were designated as the protestees, but we shall hereafter refer to them as the plaintiffs and defendants, respectively.

Plaintiffs D. H. Smyth and E. H. Smyth own lands in Harney county, Oregon, located on Smyth

creek, a tributary of Riddle creek. In 1953 they filed an application with the state engineer for the right to construct a reservoir to impound 160 acre feet of the waters of Smyth creek for irrigation purposes. Defendants Thomas E. Jenkins and Richard J. Jenkins own lands located on Riddle creek and in 1941 they were issued a permit by the state engineer authorizing them to build a reservoir for waters of Riddle creek with a storage capacity of 7,500 acre feet for irrigation purposes.

Defendants protested plaintiffs' application, and plaintiffs in turn objected to the issuance of a water right certificate to the defendants on their permit. The protests were consolidated for hearing which was held before the state engineer at Burns in October, 1953. Both protests were overruled by the state engineer, and he made his order approving plaintiffs' application to construct their reservoir and a further order that a certificate of water right be issued to defendants to store 7,500 acre feet of water under their permit, and a further certificate of water right to use of the waters thereof for irrigation purposes. This appeal is from the decree of the circuit court affirming that part of the order directing the issuance of a certificate of water right to defendants under their permit.

The substance of the objections which plaintiffs made before the state engineer to the issuance of a water right certificate to defendants to store 7,500 acre feet of water under their permit is as follows:

"1. The failure of the respondents to exercise reasonable diligence in the construction of their reservoir system as authorized by their permit;

"2. The construction of their reservoir beyond

its authorized height of eight feet to a height of sixteen feet and to the public's danger;

"3. The submergence of a much greater area of land than authorized by the storage permit as a result of the unauthorized increased height of respondents' dam;

"4. That the respondents' reservoir is so inefficient, uneconomical and wasteful that most of the water impounded cannot be put to a beneficial use; and

"5. That the dam has no adequate spillway."

The transcript of testimony taken on the hearing before the state engineer consists of 383 typewritten pages, and that taken on the appeal to and hearing by the circuit court consists of 457 typewritten pages, in addition to a number of exhibits. Substantially the same evidence appears in both transcripts, although upon the hearing in the circuit court considerable more testimony was offered on the subject of evaporation of the waters of defendants' storage area.

Three dams are involved in defendants' application for a permit to construct and maintain a reservoir for the storage of 7,500 acre feet of water for irrigation purposes. On the hearings these dams were referred to by number as follows: dam No. 1 being the defendants' main storage dam; dam No. 2 being a diversion dam to place water into the reservoir; and dam No. 3 being designed to assist in the control of the stored waters.

Defendants constructed their storage dam (dam No. 1) on Riddle creek in 1929. They utilized an old lake bed for a reservoir. Through an honest mistake, they constructed this dam at that time and stored water in the reservoir without first having obtained a permit from the state engineer as required by stat-

ute. By the use of the waters impounded in the reservoir, defendants were able to and did reclaim in excess of 600 acres of wasteland for beneficial use and also irrigated their other productive lands. They have made continual use of the reservoir and the waters impounded therein for irrigation purposes since the original construction in 1929. No other owners of lands located below the lands owned by defendants are in any manner affected by the dam and reservoir, for Riddle creek in its original state terminated on defendants' lands, with much of the water going to waste. Defendants' dam and reservoir lie below the confluence of Smyth creek and Riddle creek, and it is noteworthy that plaintiffs suffer no special injury or damage from the use defendants have made and are making of the waters of Riddle creek. It is indeed difficult to understand why they should be contesting defendants' rights as established by the state engineer on this appeal.

Learning in 1941 that they held no permit for their dam and reservoir nor a right to appropriate waters from the reservoir for irrigation purposes, and being advised by the county watermaster (an appointee and serving at the will of the state engineer: ORS 540.020) of the necessity therefor, and with his assistance, the defendants in August of that year filed with the state engineer formal application for a permit to construct a reservoir and to store for beneficial use unappropriated waters out of Riddle creek, and also an application for a permit to appropriate the waters of Riddle creek for irrigation purposes, to be taken out of Riddle creek and the reservoir. Both permits were granted by the state engineer under date of October 30, 1941. Although he was not a registered engineer, the county watermaster prepared the neces-

sary maps and drawings to be, and which were, filed in connection with defendants' applications.

The application for the construction of a reservoir stated specifically that the amount of water to be stored is 7,500 acre feet, and that the reservoir was not to be constructed in the channel of Riddle creek. It also stated that the reservoir, location of which was given, was to be filled by a feeder canal, using a diversion dam for the purpose (dam No. 2). It gave the location of the principal dam (dam No. 1) and stated that it would be 8 feet 3 inches in height, having a length on top of 800 feet, on the bottom of 788 feet, and being 12 feet wide on top. It appeared from the evidence that the estimated height of the dam was measured from the ground level rather than from the bed of the stream. Describing the proposed dam No. 3, the application read: "Dam No. 3 will hold all water in reservoir which will be concrete same as Dam No. 1." In answering the question on the application as to when construction work would begin, the applicants stated as follows: "Most complete." They also stated that the work would be completed on or before December 1, 1942.

After the permits were granted, defendants performed additional construction work on dam No. 1, completing that work in 1942. Because of war conditions existing at the time, they did not construct dam No. 2 until 1945, and they never completed dam No. 3, it having developed that dam No. 3 was unnecessary. In 1943 defendants notified the state engineer that their construction work had been completed, although at that time neither dam No. 2 nor dam No. 3 had been constructed. Defendants at no time applied to the state engineer for an extension of time in which to complete the work of construction.

Plaintiffs' contentions in this case are based almost entirely upon the fact that the height of the main dam was 16 feet rather than 8 feet 3 inches as stated in the application, and upon defendants' failure to construct dams Nos. 2 and 3 within the time set forth in the application and permit, without having secured an extension of time from the state engineer.

ORS 537.230 provides:

"Except as provided in ORS 537.240 [has to do with Federal permits when required], actual construction work * * * shall begin within one year from the date of approval of the application. The construction of any proposed irrigation or other work shall thereafter be prosecuted with reasonable diligence and be completed within a reasonable time, as fixed in the permit, not to exceed five years from the date of approval.

"(2) Except as provided in ORS 537.240, the State Engineer shall, for good cause shown, order and allow an extension of time, including an extension beyond the above five-year limitation, within which irrigation or other works shall be completed or the right perfected, under any permit. * * * * "

Upon the completion of construction for which permit has been issued, the applicant is entitled to a water right certificate issued by the state engineer. ORS 537.250 provides:

"(1) Upon it appearing to the satisfaction of the State Engineer that an appropriation has been perfected in accordance with the provisions of the Water Rights Act, he shall issue to the applicant a certificate of the same character as that described in ORS 539.140. The certificate shall be recorded and transmitted to the applicant as provided in that section.

"(2) Rights to the use of water acquired under the provisions of the Water Rights Act, as set

forth in any such certificate, shall continue in the owner thereof so long as the water shall be applied to a beneficial use under and in accordance with the terms of the certificate, subject only to loss by nonuse as specified and provided in ORS 540.610.

"(3) The right acquired by an appropriation shall date from the filing of the application in the office of the State Engineer."

It is to the issuance of the foregoing certificate that plaintiffs object. ORS 537.260 provides:

"(1) Whenever the time within which any appropriation under a permit should have been perfected has expired and the owner of the permit fails or refuses within three months thereafter to submit to the State Engineer proof of completion of the appropriation as required by ORS 537.230 and 537.250, the State Engineer *may,* after 60 days' notice by registered mail, order the cancelation of the permit. The cancelation shall have the same force and effect as cancelation of a permit in the proceedings provided for in ORS 537.410 to 537.450.

"(2) The State Engineer *may* determine the extent to which an appropriation has been perfected under any permit at the time of submission of final proof provided for in ORS 537.250, and shall limit the certificate provided for in that section to a description of such appropriation as has been actually perfected to the extent that the water applied for has been actually applied to the beneficial use contemplated in the permit.

"(3) Any person owning an application, permit or water right certificate subsequent in priority may jointly or severally contest before the State Engineer the issuance of the water right certificate at any time before it has issued, and after the time has expired for the completion of the appropriation under the permit, or within three months after issuance of the certificate. The contest shall be brought upon application made, and hearing

shall be had in the same manner and after notice as provided in ORS 537.420 and 537.430 for proceedings for cancelation of permits. The State Engineer, in his final order, *may cancel the permit or determine the extent to which the appropriation claimed thereunder has been perfected,* and issue a water right certificate accordingly, or if a certificate has been issued, in the case of a contest within three months after its issuance, he may cancel the water right certificate, or affirm its issuance, and if the water right certificate in such case is canceled, the permit upon which it is based shall also be canceled. Any such order of cancelation shall be subject to appeal as provided in ORS 537.430.'' (Italics ours.)

██ It will be observed that under this statute the state engineer is vested with a wide discretion. It is manifest from the several provisions of the Water Code that the legislature intended to place upon the shoulders of the state engineer the primary responsibility for a proper distribution of the waters of the state for beneficial use; in some instances, however, his acts being governed by mandatory provisions of the law. It is seldom, if ever, that a court will interfere with discretionary action of the state engineer upon matters involving the administration of the water laws of the state and substitute its judgment for his. Judges are not super engineers. *Broughton's Est. v. Central Or. Irr. Dist.,* 165 Or 435, 462, 101 P2d 425, 108 P2d 276.

It is obvious from the record that the gist of defendants' application for a permit to construct a reservoir was to construct one that would store 7,500 acre feet of water. The height of the dam, as stated in the application, is not the material thing. Manifestly, the dam would have to be high enough to provide in the reservoir the necessary amount of water.

The diversionary dam and canal designed for the purpose of aiding in filling the reservoir are mere incidents to the ultimate end in view. Certainly the state engineer would not require the construction of dam No. 3 as mentioned in the application when it was made to appear that it was unnecessary. We do not condone the action of defendants in 1943 in giving notice to the state engineer that all construction was completed, when in fact dam No. 2 had not been built, nor the failure of defendants to request an extension of time for such construction; nevertheless, we are unable to discover from the record where anyone has been harmed by defendants' derelictions. Certainly the state engineer and his appointee, the county watermaster, were not misled. If the state engineer could have granted the extension of time, as, of course, he could, then he had the authority to waive failure to request such extension, which he did, as evidenced by his order directing the issuance of a certificate to defendants.

It must be kept in mind that the primary interest of the state is in the amount of running water that is going to be used for beneficial purposes, not in the methods to be employed to make that use possible, so long as the methods used do not endanger life or property, create a nuisance, or injure the vested right of some other person. Whether the methods used are proper is a question peculiarly within the discretion of the state engineer to decide. If improper, the statute vests him with ample authority and it is his duty to have them corrected so as to obviate the objections thereto.

We must not overlook the fact that when defendants filed their application to construct the reservoir in 1941, it had long before been substantially com-

pleted and was in actual use. The reservoir actually stored 7,500 acre feet of water, and no more, and the water available was being put to a highly beneficial use. On their application for a permit under the head of "remarks," defendants stated:

"In 1927 we employed Mr. Arthur Page to survey and fill out the Necessary application for the reservoir above stated. He surveyed it and we supposed that he had sent the maps and application in. We started construction upon the reservoir, built the dams and ditches necessary to store the water and take it out from said reservoir in 1928 and had been using the reservoir and the water stored therein since 1928 or 1929 supposing our application had been granted. We are using the same under this except adding some improvements for the better use of the water."

Thus, at the outset the state engineer was fully advised that there would be but little construction work upon the main dam and reservoir; it was then in use. We have not overlooked plaintiffs' contentions respecting evaporation of the waters in the reservoir and their claim that that amounts to a waste thereof within the meaning of the Water Code. However, under the facts and circumstances of this case, and in particular, in the light of the type of country in which the reservoir is located, and in the light of the further fact that before the reservoir was constructed the waters of Riddle creek were largely lost for beneficial use, we do not deem plaintiffs' contentions to be meritorious.

On the hearing before the state engineer at Burns he personally visited and viewed all the premises involved in this litigation, including the dams and reservoir. The trial judge also viewed the premises. Unquestionably, both were impressed with what they

observed on the ground. We cannot read their minds so as to know just what part their personal inspections played in connection with their final conclusions. However, we have always given greater weight to the findings of a trial judge when he has personally viewed the premises. *Becker v. Tillamook Bay Lbr. Co. et al.,* 194 Or 134, 137, 240 P2d 237.

■ Upon the conclusion of the hearing in the circuit court, the trial judge read his memorandum opinion deciding the issues between the parties. That opinion contains so much of merit that we include a portion of it herein as a part of this opinion. The trial judge said:

"On the trial, this Court has allowed evidence to be introduced that was produced before the State Engineer, plus any additional evidence relating to the part of the order appealed from. I have done this in order that I might have all the facts before me, because the State Engineer, in his determination, is not limited to the facts produced at the hearing, but can take into consideration other facts and other evidence outside the record.

"Actually, despite the length of this trial and the mass of data and testimony produced, in the Court's opinion there is little if any actual dispute as to the facts; the dispute is mostly as to the interpretation of those facts.

"The Appellants, both before the State Engineer and in this trial, have made substantially the same objections to the granting of the certificate of water right to Respondents confirming rights granted under Permit Number R-770 and Permit Number 15046. These objections are and were:

"(1) That Respondents did not exercise reasonable diligence in the construction of the works authorized by Permit R-770, in that part of the construction, dam number 3, has never been built, and that dam number 2 and the highline canal

were not completed until after the completion date set by the Engineer of October 1, 1943. This respondents have admitted;

"(2) That despite lack of completion, Respondents filed a certificate of completion with the State Engineer in 1943. This Respondents have also admitted.

"(3) That Respondents built dam number 1 many years prior to any permit and without a permit from the State Engineer. This fact is also admitted by the Respondents.

"(4) That Respondents constructed dam number 1 to a height of 12 to 16 feet when their permit authorized only a height of 8 feet. This is also admitted by Respondents, if measured according to regulations of the State Engineer now in existence.

"(5) Finally, that the system of storage used by Respondents in their works as constructed is wasteful and, because of evaporation and absorption, the water stored in excess of the 3900 acre feet which they are allowed to use in any one year cannot be applied to any beneficial use. As to this objection the evidence for both the Appellants and Respondents agrees substantially as to the rate and amount of evaporation.

"The Court has carefully read the entire order of the State Engineer, and finds that when the order was executed, the State Engineer was fully aware of all the facts. It is further the opinion of the Court that the State Engineer, should he have desired to do so, had plenty of grounds upon which to deny a final certificate to the Respondents, but apparently decided, because of various circumstances, to waive certain regulations and requirements and grant the certificate.

"The question for this court to decide is whether, under the facts, the State Engineer was justified in so doing and whether his judgment in so doing was correct.

"First of all, this court feels that, by necessity, the State Engineer is given wide discretion in waiving certain requirements and regulations concerning the application for and perfection of water rights, as long as such waivers are not arbitrary and do not injure the vested rights of others.

"Here the State Engineer was confronted by applicants for storage rights who, it is admitted, were the last users of the waters involved. There were and are no other downstream users. If the storage right was not granted, the waters could not be controlled and any surplus over the amount used would be, in effect, wasted.

"Furthermore, because such waters could not be controlled, Respondents were seriously hampered in using them for the most effective irrigation, and they were prevented from adequately farming part of their land known as the Barton Lake Ranch, on which the surplus waters ran uncontrolled.

"To grant the storage right, even in the amount of 7500 acre feet, did not infringe on any existing vested rights either downstream or upstream. In the Court's opinion the right does not now affect any upstream water right injuriously, but that is a matter of interpretation of other parts of the State Engineer's order, which this Court is not called upon to interpret in this proceeding.

"It is true that Respondents' reservoir and irrigation system is not as efficient as perhaps it could be. But efficiency is a relative term, dependent upon the area and terrain involved and dependent upon whether the rights of others in such waters are injured by such inefficiency. Considering these factors, the Court does not feel the inefficiency would justify a denial of the right.

"It is also true that the loss by evaporation is great, as it is in all parts of this area. But, in the Court's opinion, that loss by evaporation would occur in one area if stored or in another area if not

stored. Thus, this objection is not very important, in the Court's opinion.

"I feel that the State Engineer, in allowing the right to store 7500 acre feet, realized that this right would only be needed and could only be used in years of high water, which might be few and far between, but in those years would definitely be needed in order for Respondents to control these waters and make the best use, if any, that might remain in a carry-over.

"Furthermore, in allowing the right of storage, the water, merely by being controlled and out of the way of more productive land until a later period in the year, was, under these circumstances, beneficially used, even if much of it was lost by evaporation.

"This Court feels that under the law the State Engineer is allowed to use and does use certain equitable principles, and is not required to harshly hew to the line of technicalities in his regulations and requirements in dealing with the general public, particularly when the purpose of those requirements and regulations do not apply and were not intended to apply in certain given instances and under certain given circumstances. Thus this Court feels, under the facts of this case, of all of which the State Engineer was fully aware, that the State Engineer was justified in waiving certain regulations and requirements and was not arbitrary in so doing.

"Further, this Court, had it been in the position of the State Engineer at the time he executed that part of his order herein appealed from, would have also granted the rights appealed from as being in the best interests of all concerned and in an exercise of good judgment.

"Consequently, this Court confirms the part of the order of the State Engineer executed in this proceeding on March 22, 1954 which has been appealed to this Court."

The decree is affirmed. Defendants to recover costs.